## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re:

**BEACH HOUSE, LLC,**[1]

        **Debtor.**

**Chapter 11**

**Case No. 24-20211**

### DISCLOSURE STATEMENT WITH RESPECT TO PLAN OF REORGANIZATION OF BEACH HOUSE, LLC DATED APRIL 1, 2025

By and through:

**David C. Johnson, Esquire**
**Brendan T. Barry, Esquire**
**MARCUS, CLEGG**
**Portland, Maine 04101**
**(207) 828-8000**
DCJ@marcusclegg.com
BTB@marcusclegg.com

**Attorneys For Beach House, LLC**

---

[1] The last four digits of the taxpayer identification number of Beach House's federal taxpayer identification number are 5994. See 11 U.S.C. § 342(c)(1). The principal place of business and address for Beach House is 216 Long Sands Road, York, ME, 03909.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 3

II.     DESCRIPTION OF THE DEBTOR'S BUSINESS AND THE REASONS FOR THE
        CHAPTER 11 FILING ........................................................................................................ 4

III.    THE CHAPTER 11 CASE .................................................................................................. 6

IV.     SUMMARY OF THE PLAN .............................................................................................. 8

V.      ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF PLAN ......... 30

VI.     CERTAIN FEDERAL TAX CONSEQUENCES .............................................................. 31

VII.    RISK FACTORS IN CONNECTION WITH THE PLAN ................................................ 31

VIII.   RECOMMENDATION AND CONCLUSION .................................................................. 32

## DISCLAIMER

THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") AND THE DEBTOR'S PLAN OF REORGANIZATION DATED APRIL 1, 2025 (THE "PLAN"), AND THE ACCOMPANYING BALLOTS AND RELATED MATERIALS DELIVERED HEREWITH, ARE BEING PROVIDED BY THE DEBTOR[2] TO KNOWN HOLDERS OF CLAIMS AND INTERESTS PURSUANT TO § 1125 OF THE BANKRUPTCY CODE IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, THEN YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THIS DISCLOSURE STATEMENT. THE DEBTOR, AS THE PLAN PROPONENT, URGES YOU TO VOTE TO ACCEPT THE PLAN.

EACH HOLDER OF A CLAIM OR INTEREST AGAINST THE DEBTOR ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE, EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND § 1125 OF THE BANKRUPTCY CODE. NO HOLDER OF A CLAIM SHOULD RELY ON ANY INFORMATION RELATING TO THE DEBTOR, ITS ASSETS, OR THE PLAN, OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE PLAN. NO SOLICITATION FOR OR AGAINST THE PLAN MAY BE MADE EXCEPT THROUGH THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. ALTHOUGH THE DEBTOR HAS MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THEN THE PLAN SHALL CONTROL. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST SHOULD REVIEW THE PLAN IN ITS ENTIRETY.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH § 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE BANKRUPTCY

---

[2] Capitalized terms, not otherwise specifically defined in this Disclosure Statement, shall have the meaning attributed to such terms in the Plan. Headings are for convenience or reference only and shall not affect the meaning or interpretation of this Disclosure Statement.

RULES, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION, NOR ANY STATE AUTHORITY, HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT, NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE," OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON, OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE, AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.

HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL,

2

BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

HOLDERS OF CLAIMS OR INTERESTS SHOULD BE AWARE THAT THE PLAN CONTAINS TEMPORARY STAYS AND LIMITED RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

ALL OF THE PROJECTED RECOVERIES TO CREDITORS ARE BASED UPON THE ANALYSIS PERFORMED BY THE DEBTOR AND ITS PROFESSIONALS. ALTHOUGH THE DEBTOR HAS MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN AND IN THE EXHIBITS ATTACHED HERETO AND TO THE PLAN, THE DEBTOR CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE INFORMATION.

AS TO CAUSES OF ACTION, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS THE DEBTOR'S STATEMENT OF THE STATUS OF THE RESPECTIVE MATTER.

THE DEBTOR RECOMMENDS THAT CREDITORS SUPPORT AND VOTE TO ACCEPT THE PLAN. IT IS THE OPINION OF THE DEBTOR THAT THE TREATMENT OF CREDITORS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS <u>4:00 P.M.</u> <u>EST,</u> <u>_____</u>, <u>2025,</u> UNLESS EXTENDED BY ORDER OF THE BANKRUPTCY COURT.

YOUR VOTE ON THE PLAN IS IMPORTANT.

## I.    <u>INTRODUCTION</u>

On October 17, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maine. Since the Petition Date, the Debtor has remained in possession of its Assets and managed its business as a debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code.

The Debtor submits this Disclosure Statement pursuant to § 1125 of the Bankruptcy Code in connection with the solicitation of votes to accept or reject the Plan.  The Bankruptcy Court will hold hearings on: (i) the adequacy of this Disclosure Statement; and (ii) confirmation of the Plan. The Debtor will request that the Bankruptcy Court approve this Disclosure Statement as containing "adequate information," in accordance with § 1125(b) of the Bankruptcy Code, to enable a hypothetical, reasonable investor typical of claimholders in a Class of Claims entitled to vote on the Plan to make an informed judgment about whether to accept or reject the Plan.

This Disclosure Statement sets forth certain information regarding: (i) the Debtor's prepetition operating and financial history; (ii) the Debtor's need to file for relief under chapter 11 of the Bankruptcy Code; (iii) significant events that have occurred during the Case; (iv) the terms of the Plan; (v) the manner in which Distributions will be made under the Plan; (vi) certain effects of Confirmation of the Plan; (vii) certain risk factors associated with the Plan; and (viii) the Confirmation process and the voting procedures that Holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

The Confirmation Hearing will be held at  **:00 .m on                              , 2025,** before the Honorable Michael A. Fagone, United States Bankruptcy Judge, at the Bankruptcy Court located at MC Smith Federal Building, 202 Harlow Street, 3rd Floor, Bangor, Maine.  At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements for Confirmation under the Bankruptcy Code.  Objections, if any, to Confirmation of the Plan must be filed and served so that they are received on or before  **:00 .m. on                                     , 2025**. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequently adjourned Confirmation Hearing or through any other notice of adjournment.  The Debtor may also seek to continue or reschedule the Confirmation Hearing.

## II.    DESCRIPTION OF THE DEBTOR'S BUSINESS AND THE REASONS FOR THE CHAPTER 11 FILING

### A.    The Debtor's History and Business Model

The Debtor was formed in July of 2021 to purchase the Sea Latch Inn, a 78-room hotel located on the Real Property[1] and across the street from Long Sands Beach in York, Maine. More specifically, the approximately two-acre property has sixteen (16) structures on it housing various rooms and suites: a three-story "Manor Building" a two-story North Building, the one-story South Building, and thirteen (13) one-bedroom cabins. The Debtor operates a seasonal business, generally opening for guests in April and closing in the late fall, generally late November.

In order to purchase the Real Property, the Debtor borrowed money from a lender, Thrive Lending Fund II, LLC. To pay off that debt and obtain capital to refurbish the hotel, the Debtor entered into two loans from First Boston, one in  2022 and one in 2023. The 2022 loan was in the principal amount of $5.49 million and the 2023 loan was in the principal amount of $7.95 million. Proceeds of the 2023 loan were also used in part to fund improvements at another hotel in York, York Beach Surf Club, LLC ("YBSC"). To secure these  loans, the Debtor provided  First Boston with a Mortgage on the Real Property, together with an assignment of rents. Affiliated entities, including 11 Webber, YBSC and others, also provided mortgages and other security for the First Boston loans.  Both notes were short-term, high interest rate

---

[1]        Defined terms shall have the same meanings as ascribed them in the Plan unless otherwise noted herein. Readers are directed to, *inter alia*, Article II of the Plan for a list of defined terms.

"bridge" loans. Both the Debtor and First Boston expected that the Debtor would be able to refinance the Real Property to satisfy those loans in short order. Consistent with its plan, the Debtor used the borrowed funds to refinance the initial loan from Thrive Lending Fund II, LLC and make much-needed capital improvements to the Real Property.

**B.**       **Events Leading to the Debtor's Chapter 11 Filing**

Unfortunately for the Debtor's plans, interest rates spiked in 2023, resulting in extremely unsettled capital markets. That market disruption prevented the refinancing of the First Boston debt as planned. Adding insult to injury, a massive storm in December of 2023 caused extensive damage to the Real Property that comprised much of the infrastructure and left many of the rooms off-line come the 2024 season. The Debtor was forced to expend significant amount of cash to repair the damage. In addition, the Debtor retained a third-party hospitality management company, Scout Hotel and Resort Management LLC d/b/a Maverick Hotels ("Maverick") to operate the hotel. As part of that arrangement, Maverick required additional renovations and upgrades to the Real Property.

As a result of these events, the Debtor fell into default on its obligations to First Boston, which scheduled a foreclosure auction of the Real Property. The Debtor filed for Chapter 11 protection prior to the auction.

**C.**       **Summary of the Debtor's Most Significant Indebtedness**

The Debtor provides the following summary of significant Prepetition and Postpetition Claims that require resolution under the Plan. This discussion is not exhaustive.

**1.**       **Town of York**

On April 1, 2024, the Town of York, Maine committed real estate taxes against the Real Property for Fiscal Year 2024-2025 in the total assessed value of $41,527.92. Pursuant to Maine law, real estate taxes assessed by municipalities, such as the Town, are secured by an inchoate lien on the property it taxes until such taxes are paid. This lien is awarded a super priority status, placing it as first priority before all other liens and encumbrances on the Real Property.

**2.**       **York Sewer District**

For services provided to the Debtor prior to the  Petition Date, the York Sewer District is owed $5,290.52. Pursuant to Maine law, the York Sewer District holds a perfected lien on the property to which it provides services for any unpaid charges until such charges are paid. This statutory lien held by York Sewer District is awarded priority status, placing it ahead of all other liens and encumbrances on the Real Property, except for the lien held by the Town of York for unpaid real estate taxes.

**3.**       **First Boston**

As discussed above, the Debtor entered into two loans with First Boston prior to the Petition Date. On or about October 31, 2022, the Debtor entered into that certain loan agreement with First Boston pursuant to which the Debtor, along with 11 Webber and two other affiliated entities, borrowed the principal amount of $5,490,000.00 from First Boston (the "First Boston Loan #1"). The First Boston Loan #1 is secured by a Mortgage on the Real Property, together with certain real property

owned by 11 Webber and the two other co-obligors, and by an Assignment of Rents relating to the same (the "First Boston Loan #1 Collateral"). On or about April 6, 2023, Debtor entered into an additional loan agreement with First Boston, pursuant to which the Debtor, along with 11 Webber and York Beach Surf Club, LLC ("YBSC"), borrowed the principal amount of $7,950,000.00 from First Boston (the "First Boston Loan #2" and together with the First Boston Loan #1, the "First Boston Secured Loans"). The First Boston Loan #2 is secured by a Mortgage on the Real Property, certain real property owned by 11 Webber and YBSC, and by an Assignment of Rents relating to the same (the "First Boston Loan #2 Collateral"). The total amount outstanding under the First Boston Secured Loans as of the Petition Date (according to the proofs of claim filed by First Boston) equaled $15,689,519.30 ($6,370,429.88 due under First Boston Loan #1 and $9,319,089.41 due under First Boston Loan #2).

### 4.      Tax Obligations

For periods of time pre-dating October 17, 2024, certain taxing authorities, including Maine Revenue Services, Maine Department of Labor and the Internal Revenue Service, claim that Debtor failed to pay past-due taxes. The Internal Revenue Service estimates that, for tax years 2021-2024, Debtor owes a total of **$188,485.89**, including fees and interest.

The Maine Department of Labor claims that **$7,335.72** is owed by Debtor for taxes, interest and fees incurred for unemployment taxes incurred from 2022-2023.

Maine Revenue Services anticipates filing a proof of claim prior to the April, 15, 2025 governmental entity deadline. To date it has not done so, so the Debtor is using the figure in its records, $20,635.59. The Debtor reserves the right to amend this Disclosure Statement if and when Maine Revenue Services files its proof of claim.

### 5.      Trade Debt

Excepting the Claims described above, the Debtor believes there remains roughly **$130,000** in additional unsecured trade claims against the Debtor, after accounting for unsecured claims.

## III.      THE CHAPTER 11 CASE

The following are significant events and issues that arose during the Case, including a discussion of certain deadlines that will be set in conjunction with Confirmation of the Plan:

### A.      Employment of Professionals

During the course of the Case, the Bankruptcy Court approved the employment of the following Professionals: Marcus | Clegg, as chapter 11 counsel to the Debtor.

### B.      Use of Cash Collateral

Companies reorganizing in Chapter 11 typically finance continuing business activities through use of "cash collateral" or through the proceeds of loan transactions that occur post- petition and are approved by the Bankruptcy Court. "Cash collateral" generally consists of cash on hand at the time of the filing and accounts receivable[3] ("Cash Collateral"). A debtor can obtain permission to use Cash Collateral either by obtaining consent of parties that hold an interest in Cash Collateral or over their objection by demonstrating

6

that those parties' interests are adequately protected either by virtue of or notwithstanding the use of Cash Collateral. In this case, the various lenders who may have a claim to Cash Collateral agreed to general terms for the use of Cash Collateral.

### C.    Potential Avoiding Power Causes of Action

In the ninety (90) days prior to the Petition Date, the Debtor made numerous disbursements to trade creditors and other parties as identified in the Debtor's Statement of Financial Affairs (the "90-Day Transfers"). The 90-Day Transfers total approximately **$68,000**. Claims to avoid and recover the 90-Day Transfers can only be brought against parties who, in the aggregate, received more than **$7,575.00** in the 90 days before the Petition Date. See 11 U.S.C. § 547(c)(9). The Debtor is also required to consider any and all reasonably known defenses. These include (among other defenses): (i) a bar to recovery to the extent of new value provided after each avoidable transfer; or (ii) a bar to recovery of any transfer made in the ordinary course of business (either between the parties or in the relevant industry).

After removing payments for employee payroll and benefits, payments to parties with known or likely complete or nearly complete defenses, and smaller payments that the Debtor has determined are not cost-effective to pursue, although the Debtor has not completed its analysis, the 90-Day Transfers subject to potential avoidance as Avoiding Power Causes of Action is likely to result in *de minimis* returns to the Debtor after accounting for the costs and expenses associated with pursuing such Avoidance Causes of Action.

**Under § 502(d) of the Bankruptcy Code, the Bankruptcy Court shall disallow any claim of any entity that is a transferee of an Avoidance Cause of Action. All Holders of Claims against the Debtor who become the subject of Avoidance Causes of Action are hereby on notice that their Claim, if any, may be disallowed or objected to on the basis of § 502(d) of the Bankruptcy Code.**

### D.    Potential Post-Confirmation Litigation

The Debtor reserves and does not release any Claims or Causes of Action that it may have. The Debtor further reserves all Claims and Causes of Action held by, through, or on behalf of the Debtor or the Estate against any other Person that have not otherwise been resolved or disposed of, whether or not specifically identified in this Disclosure Statement.

**THIS DISCLOSURE STATEMENT CONSTITUTES NOTICE TO ANY PARTY IN INTEREST THAT THE DEBTOR RESERVES THE RIGHT TO PURSUE ANY AND ALL SUCH CAUSES OF ACTION TO JUDGMENT AND COLLECTION, AND THAT THE PROCEEDS OF ALL SUCH CAUSES OF ACTION, IF ANY, MAY BE USED TO HELP FUND CERTAIN OBLIGATIONS UNDER THE PLAN.**

### E.    Establishment of Bar Dates and Disallowance of Late-Filed Claims

The bar date for filing a proof of claim with respect to any Prepetition Claims, except those of Governmental Units (as such term is defined in the Bankruptcy Code), but including any 503(b)(9) Claim, was February 19, 2025 (the "General Bar Date").

The bar date for filing a Proof of Claim based upon the avoidance of a transfer of the Debtor's property shall be 30 days after entry of the judgment avoiding the relevant transfer, unless a different deadline is set by an order of the Bankruptcy Court.

The deadline for Governmental Units to file proofs of claim is April 15, 2025 (the "Governmental Bar Date").

The Plan sets sixty (60) days after the Effective Date as the deadline to seek allowance of what are defined as Non-Ordinary Course Administrative Claims—essentially, claims allowable under § 503(b) of the Bankruptcy Code that are not in the nature of Ordinary Course Administrative Expense Claims. This type of Claim includes Professional Fee Claims.

Under the Plan, Holders of Ordinary Course Administrative Claims are not required to File any request for payment of such Claims. The Debtor has paid and continues to pay all Ordinary Course Administrative Claims as they become due. The Debtor shall identify the parties that the Debtor believes hold Ordinary Course Administrative Claims in a schedule attached to the Notice of the Effective Date (as defined below). Holders of Ordinary Course Administrative Claims may, but are not required to, File a motion regarding their Ordinary Course Administrative Claim by the Non-Ordinary Course Administrative Bar Date.

The deadline for seeking allowance of a Claim following rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code shall be thirty (30) calendar days after the later to occur of the Confirmation Date or the date of entry of an order authorizing rejection of the contract or unexpired lease.

**Any Claims that were not timely filed before the applicable bar date will be forever barred from assertion against the Debtor, the Estate, and the Assets, unless such deadline is extended by an order of the Bankruptcy Court or by agreement with the Debtor. The Holder of such a Claim is not entitled to vote on the Plan or to participate in any Distributions in the Case. Absent agreement, the Confirmation Order will disallow the following proof of claim as having been filed after the General Bar Date:**

| Claim No. | Claimant | Date Filed |
|-----------|----------|------------|
| 15 | Sojern Inc.<br>18135 Burke Street, 3rd Floor<br>Omaha, NE 68022 | February 27, 2025 |

**All other rights and bases for objection to any Claims are reserved to the Debtor and the Estate, except to the extent set forth herein or by separate Order of the Bankruptcy Court.**

## IV.   SUMMARY OF THE PLAN

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, TREATMENT, AND IMPLEMENTATION OF THE PLAN. IT IS QUALIFIED IN ITS ENTIRETY BY THE PLAN. CREDITORS ARE URGED TO READ THE PLAN IN FULL.**

### A.   Introduction

Pursuant to the Plan, the Debtor proposes to effectuate a reorganization and to complete a balance sheet restructuring that will aid in the Debtor's viability. On the Effective Date, except as

otherwise set forth in the Plan, the Estate's interest in all Assets shall vest in the Debtor free and clear of any and all Claims, Interests, or defenses (including recoupment) with respect to any Claims, whether known or unknown, asserted or unasserted, or contingent or fixed. Allowed Claims shall receive certain Distributions discussed in the Plan and summarized in this Disclosure Statement.

**B.** **Voting Procedures and Confirmation Requirements**

    **1.** **Ballots and Voting Deadlines**

Accompanying this Disclosure Statement is a ballot for acceptance or rejection of the Plan. The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for acceptance or rejection of the Plan **MUST BE SERVED ON DEBTOR'S COUNSEL** listed immediately below by no later than **4:00 p.m., prevailing Eastern time, on _____, 2025** (the "Voting Deadline").

> Marcus | Clegg
> 16 Middle Street, Suite 501
> Portland, Maine 04101
> Attn: David Johnson, Esq.
> dcj@marcusclegg.com

    **BALLOTS NOT ACTUALLY RECEIVED BY THE VOTING DEADLINE MAY NOT BE COUNTED, AND BALLOTS THAT DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN. BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL <u>NOT</u> BE COUNTED, UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT.**

Even if you do not vote to accept the Plan, you may still be bound by it if it is accepted by the requisite Holders of Claims and Interests and confirmed by the Bankruptcy Court.

    **2.** **Parties in Interest Entitled to Vote on the Plan**

Pursuant to the Bankruptcy Code, only Holders of Allowed Claims or Interests in Classes of Claims that are Impaired are entitled to vote to accept or reject the Plan. In addition, any Claim to which an objection has been Filed is not entitled to vote unless the Bankruptcy Court, upon timely application of the Holder of the Claim, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Any such application must be heard and determined by the Bankruptcy Court on or before the Voting Deadline. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the vote was not solicited or made in good faith or in accordance with the provisions of the Bankruptcy Code.

    **3.** **Definition of Impairment**

Under § 1124 of the Bankruptcy Code, a Class of Claims or Interests is "impaired" under a plan unless, with respect to each Claim or Interest of such Class, the plan:

    (1)    Leaves unaltered the legal, equitable, and contractual rights of the holder of the claim or equity interest; or

(2)      Notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

(A)      Cures any such default that occurred before or after the commencement of the Case under the Bankruptcy Code, other than a default of a kind specified in § 365(b)(2) of the Bankruptcy Code;

(B)      Reinstates the maturity of such claim or interest as it existed before such default;

(C)      Compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law;

(D)      If such claim or such interests arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to § 365(b)(1)(A) of the Bankruptcy Code, compensates the holder of such claim or such interest (other than the debtor or an insider) for actual pecuniary loss incurred by such holder as a result of such failure; and

(E)      Does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## 4.      **Classifications and Voting Status under Plan**

In the Plan, the Debtor has classified Claims and Interests as follows:

| Class | Type of Claim | Impaired/Unimpaired | Entitled to Vote (Yes/No) |
|-------|---------------|---------------------|---------------------------|
| Class 1 | Town Secured Claim | Impaired | Yes |
| Class 2 | Sewer District Secured Claim | Impaired | Yes |
| Class 3 | First Boston Secured Claim | Impaired | Yes |
| Class 4 | Clean Laundry Funding Secured Claim | Impaired | Yes |
| Class 5 | Ascentium Capital Secured Claim | Impaired | Yes |
| Class 6 | Intentionally left blank. | | |
| Class 7 | Priority Tax Claims | Impaired | Yes |

10

| Class 8 | General Unsecured Claims, including any Allowed General Unsecured Claims of First Boston | Impaired | Yes |
| Class 9 | Equity Interests | Unimpaired | No |

## C.    Confirmation Procedure

### 1.    Confirmation Hearing

The Confirmation Hearing is scheduled before the Honorable Michael A. Fagone, United States Bankruptcy Judge, for __:___.m. on_____, 2025__. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement made at the Confirmation Hearing or such continued Confirmation Hearing or through an order entered by the Bankruptcy Court.

### 2.    Procedure for Objections

Any objection to Confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party and all grounds for the objection. Any objection must be Filed with the Bankruptcy Court and served on counsel for the Debtor by **4:00 p.m. on                    , 2025**. You may file your response by e-mailing the response to efiling@meb.uscourts.gov; by mailing the response to U.S. Bankruptcy Court, District of Maine, 202 Harlow Street, Bangor, Maine 04401; by hand-delivering the response to the Clerk of the Court at 202 Harlow Street, Bangor, Maine 04401; or by filing via the Bankruptcy Court's CM/ECF filing system. Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court. Although not required, it would assist parties if the amount of the Claim and the number of any Filed proof of claim held by the objecting party is identified in such objection.

### 3.    Requirements for Confirmation

The Bankruptcy Court will confirm the Plan only if it meets all the requirements of § 1129 of the Bankruptcy Code. Among the requirements for Confirmation are that the Plan is: (a) accepted by all Impaired Classes of Claims that are entitled to vote or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; (b) feasible; and (c) in the "best interests" of Creditors Impaired under the Plan that have not voted to accept the Plan. The Bankruptcy Court must also find that:

- The Plan has classified Claims in a permissible manner;
- The Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and
- The Plan was proposed in good faith.

### 4.    Voting and Acceptance of the Plan

Except as otherwise provided by the Bankruptcy Code, as a condition to Confirmation of the Plan,

the Bankruptcy Code requires each Class of Impaired Claims or Interests entitled to vote on the Plan to vote to accept the Plan. The Bankruptcy Code defines acceptance of a plan by a Class of Creditors as acceptance by Holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of those Claims in that Class. Holders of Claims that fail to vote may be deemed to have accepted the Plan. A vote, moreover, may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that it was not made or solicited in good faith.

Classes of Claims that are Unimpaired under the Plan are conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote on the Plan. Classes of Claims that receive no distribution under the Plan are conclusively presumed to have rejected the Plan and are not entitled to vote on the Plan.

### 5.    Best Interests Test

The "best interests" of Impaired Creditors test requires that each Holder of a Claim that has not voted to accept the Plan and belongs to an Impaired Class receive or retain under the Plan property of a value that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. To determine what members of each Impaired Class of Claims would receive if the Debtor were liquidated, the Bankruptcy Court must determine the dollar amount that a liquidation of the Debtor's Assets would generate in the context of a chapter 7 liquidation. The amount available for satisfaction of Claims would consist of the proceeds resulting from the liquidation, reduced by the costs and expenses of the liquidation.

The liquidation analysis relating to the Debtor is fairly straightforward. The Debtor has the following pools of Assets: (a) certain real property; and (b) certain personal property, including cash and Causes of Action. The liquidation value of each of the two pools of assets will be discussed in turn below.

### Real Property

As of the Effective Date, the Debtor will own the Real Property. Pursuant to an appraisal commissioned by First Boston in November of 2024 and as reflected in the Debtor's amended schedules, the Real Property has a fair market value of $8,300,000. Should the Real Property be liquidated-*i.e.*, sold at foreclosure-the Debtor anticipates that said liquidation would realize an amount, after auction fees, *etc.*, equal to 70% of the fair market value, or **$5,810,000**.

### Personal Property

The Debtor's personal property consists of hotel furniture, fixtures and equipment used in the operation of the Real Property. The fair market value of this personal property, which necessarily sees significant  wear and tear given that it is used in the hospitality industry, is $100,000. If this personal property was liquidated, the Debtor anticipates that it would realize 50% of the fair market value, or **$50,000**.

### Cash

As of the Effective Date, the Debtor anticipates having **$50,000** in cash and cash equivalents on hand.

**Assets Distribution After Liquidation**

If this case proceeded under chapter 7 and the Debtor's assets were liquidated, the estate would have **$5,910,000** to distribute ($5,810,000 in Real Property proceeds; $50,000 in personal property proceeds; and $50,000 in cash). The Town (Class 1) and the Sewer District (Class 2), would be paid in full and First Boston (Class 3) would take all remaining funds, which would an amount significantly less that the principal amount of the proposed Class 3 Note. **No other creditors would receive any value**. As such, the Plan meets the best interests test for Impaired Creditors contained in Section 1129 of the Bankruptcy Code.

Preparation of a liquidation analysis is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the Debtor, based upon its business judgment and input from advisors, are inherently subject to business, economic, and other risks, uncertainties, and contingencies. The values stated herein have not been subject to review, compilation, or audit by any independent accounting firm and may represent outcomes different from those that a liquidator would make.

## 6. The Feasibility Test

The "feasibility" test requires the Bankruptcy Court to find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization of the Debtor. The Debtor believes that the Cash Flow Projection attached to the Plan as **Exhibit A** demonstrates that the Debtor is viable and will continue to be viable.

The Debtor has fully repaired all damage suffered during the December of 2023 storm and enters the 2025 season with <u>all</u> rooms available for rent, something that never occurred in the prior years that the Debtor owned the Real Property. In addition, bookings for the 2025 season are well above the historical numbers, and the Debtor is comfortable that these factors, when taken together, will allow it to meet, if not surpass, the forecast found in the Cash Flow Projection. In other words, the Debtor does not believe that liquidation or further reorganization is likely to be needed.

## 7. Unfair Discrimination and the Fair and Equitable Test

If any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan, despite such non-acceptance, under the "cram down" provisions set forth in § 1129(b) of the Bankruptcy Code. To obtain Confirmation under those circumstances, the Debtor must show, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each Impaired Class of Claims that has rejected the Plan.

Under § 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" to a class of claims or equity interests if, among other things, a plan provides: (i) with respect to secured claims, that each holder of a claim included in the rejecting class will receive or retain on account of its claim property that has a value, as of the effective date of a plan, equal to the allowed amount of such claim; and (ii) with respect to unsecured claims and equity interest, that the holder of any claim or equity interest that is junior to the claims or equity interest of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to receive on account of its claim or interest. The Debtor submits that these requirements are or will be met here.

13

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTOR MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE.**

**8.      Other Requirements of § 1129 of the Bankruptcy Code**

The Debtor submits that the Plan meets or will meet all of the other requirements of § 1129 of the Bankruptcy Code, including that the Plan was proposed in good faith.

**D.      Classification and Treatment of Claims and Interests Under the Plan**

The Bankruptcy Code requires the Plan to place certain Claims in classes. Other Claims can remain unclassified. The types and treatment of unclassified Claims is discussed initially below, followed by the types and treatment of classified Claims.

**1.      Unclassified Claims**

As noted, certain types of Claims are not placed into classes. Instead, such Claims are Unclassified Claims. Unclassified Claims are Unimpaired, and Holders of Unclassified Claims do not vote on the Plan because they are automatically entitled to specific treatment provided for Unclassified Claims under the Bankruptcy Code or the Claim treatment has been agreed upon by the Debtor and a particular Claimant.

**a.      Administrative Claims**

**i.      Allowance of Administrative Claims**

**(a)      Allowance of Non-Ordinary Course Administrative Claims**

Unless otherwise expressly provided in this Plan, Non-Ordinary Course Administrative Claims shall be Allowed Claims only if: (i) on or before the Non-Ordinary Course Administrative Claim Bar Date, the Person holding such Non-Ordinary Course Administrative Claim both Files with the Bankruptcy Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim and serves the motion on counsel for the Debtor and the U.S. Trustee; and (ii) a Final Order is subsequently entered by the Bankruptcy Court allowing the Non-Ordinary Course Administrative Claim. U.S. Trustee Fees are exempted from the Filing requirements set forth herein, and U.S. Trustee Fees shall be paid as required by statute.

**THE NON-ORDINARY COURSE ADMINISTRATIVE BAR DATE IS SIXTY (60) CALENDAR DAYS AFTER THE EFFECTIVE DATE. Notice of the actual date upon which the Non-Ordinary Course Administrative Claims Bar Date falls shall be set forth in the Notice of the Effective Date of the Plan that shall be served on parties-in-interest within fourteen (14) calendar days after the Effective Date (the "Notice of the Effective Date"). Persons holding Non-Ordinary Course Administrative Claims that do not File and serve a motion for payment on or before the Non-Ordinary Course Administrative Claim Bar Date shall be forever barred from asserting those Claims against the Debtor, the Estate, and/or the Assets. The Debtor or any other party-in-interest may File an objection to any motion requesting allowance of a Non-Ordinary Course Administrative Claim in accordance with the Bankruptcy Code and/or any applicable Bankruptcy**

14

**Rules.**

### (b)    Allowance of Ordinary Course Administrative Claims

Holders of Ordinary Course Administrative Claims shall not be required to File any request for payment of such Claims. The Debtor has paid and continues to pay all Ordinary Course Administrative Claims as they become due. Any party seeking express allowance of an Ordinary Course Administrative Claim may File a motion by the Non-Ordinary Course Administrative Bar Date or forever waives the right to do so. The Debtor shall identify the parties that the Debtor believes hold Ordinary Course Administrative Claims in a schedule attached to the Notice of the Effective Date.

### (c)    Allowance of 503(b)(9) Claims

Holders of 503(b)(9) Claims, if any, were required to File proofs of claim by the General Bar Date, which was February 19, 2025, for most Creditors. A 503(b)(9) Claim shall be an Allowed 503(b)(9) Claim if: (i) no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the Claims Objection Deadline, which is ninety (90) days after the Effective Date, unless upon motion of the Debtor, the Bankruptcy Court extends such deadline; or (ii) any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement between the Claimant and the Debtor or by Final Order of the Bankruptcy Court.

### (d)    Allowance of Professional Fee Claims

Each Professional seeking approval by the Bankruptcy Court of a Professional Fee Claim[2], which includes compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date, must (in light of such Claims constituting Non-Ordinary Course Administrative Claims): (i) File its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by no later than the date that is **sixty (60) days after the Effective Date.** Any objection to such Professional Fee Claims shall be Filed on or before the date specified in the notice of the application for final compensation. All such requests for payment of such Professional Fee Claims shall be subject to the authorization and approval of the Bankruptcy Court. **Persons holding Professional Fee Claims who do not timely File a final fee application shall be forever barred from asserting those Claims against the Debtor, the Debtor's Estate, or the Assets, unless otherwise ordered by the Bankruptcy Court. To the extent not paid in full prior to the Effective Date, the Debtor shall remain liable for Professional Fee Claims Allowed by the Bankruptcy Court.**

### (e)    Allowance of Cure Claims

A Cure Claim shall become an Allowed Cure Claim when the assumption of the affected unexpired lease or executory contract is effective, pursuant to a Final Order of the Bankruptcy Court addressing assumption of the applicable unexpired lease or executory contract and the amount of the Cure Claim is

---

[2]       Professional Fee Claims do not include Claims either under § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered or under § 503(b)(3)(D) of the Bankruptcy Code for expenses incurred in making a substantial contribution to the Estate, which Claims are Non-Ordinary Course Administrative Claims and are subject to the Non-Ordinary Course Administrative Claims Bar Date.

quantified by that Final Order. **Assumption and rejection of unexpired leases and executory contracts is discussed in § V of the Plan.**

### (f)    U.S. Trustee Fees

U.S. Trustee Fees shall be determined in accordance with 28 U.S.C. § 1930, and nothing in this Plan shall impose or is intended to impose an obligation on the U.S. Trustee to File any Claim or motion relating to the U.S. Trustee Fees.

## b.    Treatment of Administrative Claims

### i.    Payment of Allowed Non-Ordinary Course Administrative Claims

Except to the extent that any Person entitled to payment of a Non-Ordinary Course Allowed Administrative Claim agrees to different treatment, each Holder of a Non-Ordinary Course Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash in an amount equal to such Allowed Non-Ordinary Course Administrative Claim on the later of: (i) the Effective Date; or (ii) the date that is fourteen (14) calendar days after such Non- Ordinary Course Administrative Claim becomes an Allowed Non-Ordinary Course Administrative Claim, or, in either case, as soon thereafter as is practicable.

### ii.    Payment of Allowed Ordinary Course Administrative Claims

Each Ordinary Course Administrative Claim, unless disputed by the Debtor, shall be satisfied by the Debtor, under the terms and conditions of the particular transaction (including historic practice between the parties) giving rise to that Ordinary Course Administrative Claim without any further action by the Holder of such Ordinary Course Administrative Claim.

### iii.    Payment of 503(b)(9) Claims

Except to the extent that any Holder of a 503(b)(9) agrees to a different treatment, each Holder of an Allowed 503(b)(9) Claim, if any, shall receive, in full satisfaction, discharge, exchange, and release thereof, Cash in an amount equal to the Allowed amount of the 503(b)(9) Claim on the later of: (i) the Effective Date; or (ii) the date that is fourteen (14) calendar days after such 503(b)(9) Claim becomes an Allowed Claim or, in either case, as soon thereafter as is practicable.

### iv.    Payment of Professionals

Holders of Professional Fee Claims, to the extent approved by the Bankruptcy Court, are to be paid, in full satisfaction, discharge, exchange, and release thereof, Cash in such amounts as are Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable. **To the extent not paid in full prior to the Effective Date, the Debtor shall remain liable for Professional Fee Claims Allowed at that time or subsequently Allowed by the Bankruptcy Court.**

### v.    Payment of U.S. Trustee Fees

When due in the ordinary course, all U.S. Trustee Fees payable under 28 U.S.C. § 1930, shall be

paid in Cash, in full. Nothing in this Plan alters or modifies any obligation of the Debtor to pay fees required under 28 U.S.C. § 1930 or to file reports required by the U.S. Trustee.

### vi.   Payment of Cure Claims

Each Holder of a Cure Claim shall receive, in full satisfaction, discharge, exchange, and release thereof, payment of such Cure Claim pursuant to the terms of any agreement between the Holder of the Cure Claim and the Debtor or pursuant to the terms of any Final Order of the Bankruptcy Court establishing the Cure Claim. If no terms of payment are specified in either an agreement or a Final Order of the Bankruptcy Court, then the Cure Claim shall be paid in Cash, in full, on the date that the assumption and cure or assumption and assignment of the unexpired lease or executory contract is effective or as soon thereafter as is practicable, as required by § 365(b) of the Bankruptcy Code. Assumption and rejection of executory contracts and unexpired leases is discussed in § V of the Plan. Section V of the Plan includes a schedule of executory contracts and unexpired leases to be assumed and provisions for cure amounts and payment of those amounts.

### c.   Treatment of Priority Tax Claims

In accordance with § 1129(a)(9)(C) of the Bankruptcy Code, except as otherwise agreed by the Debtor and the applicable Claimant, each Holder of an Allowed Priority Tax Claim shall receive deferred Cash payments over a period not to exceed five (5) years from the Petition Date. Payments shall be made in equal, annual installments, and each installment shall include simple interest accrued on the unpaid portion of such Allowed Priority Tax Claim at the Federal Judgment Rate in effect as of the Effective Date per annum from and after the Effective Date; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Priority Tax Claim, in full, at any time on or after the Effective Date and before the expiration of the five-year period without premium or penalty.

### 2.   Classified Claims

### a.   General

Claims against the Debtor (other than the Unclassified Claims described above) are classified into the following Classes:

| Class | Type of Claim | Impaired/Unimpaired | Entitled to Vote (Yes/No) |
|-------|---------------|---------------------|---------------------------|
| Class 1 | Town Secured Claim | Impaired | Yes |
| Class 2 | Sewer District Secured Claim | Impaired | Yes |
| Class 3 | First Boston Secured Claim | Impaired | Yes |
| Class 4 | Clean Laundry Funding Secured Claim | Impaired | Yes |

| Class 5 | Ascentium Capital Secured Claim | Impaired | Yes |
| Class 6 | Intentionally left blank. | | |
| Class 7 | Priority Tax Claims | Impaired | Yes |
| Class 8 | General Unsecured Claims, including any Allowed General Unsecured Claims of First Boston | Impaired | Yes |
| Class 9 | Equity Interests | Unimpaired | No |

**b.      Town Secured Claim (Class 1)**

**i.      Description (Class 1)**

Class 1 consists of the Allowed Secured Claims of the Town. On April 1, 2024, the Town assessed real estate taxes against the Real Property for fiscal year 2024-2025 in the total amount of $41,527.92 (the "Real Estate Taxes"). Pursuant to 36 M.R.S.A. § 552, an inchoate lien was placed on the Real Property to secure payment of the Real Estate Taxes and remains in force until the same are paid.

**ii.      Treatment and Security (Class 1)**

The Allowed Class 1 Claim shall be satisfied in the form of a note given by the Debtor in favor of the Town the amount of $41,527.92 (the "Class 1 Note"). The Class 1 Note shall accrue interest at a rate of 8.5% *per annum* pursuant to 11 U.S.C. § 511 and 36 M.R.S.A. §§ 186 and 505 and shall be payable in five (5) equal annual payments pursuant to 11 U.S.C. § 1129(a)(9)(D). The first annual payment on the Class 1 Note shall be made on the Effective Date. The Debtor may prepay the Class 1 Note at any time without penalty.

All collateral securing the Town's Allowed Secured Claim shall secure the Class 1 Note.

**c.      Sewer District Secured Claim (Class 2)**

**i.      Description (Class 2)**

Class 2 consists of the Allowed Secured Claims of the Sewer District. Pursuant to 38 M.R.S.A. § 1208, the Sewer District holds a perfected lien on the Real Property to secure payment obligations for the services provided thereon prior to the Petition Date.

**ii.      Treatment and Security (Class 2)**

The Allowed Class 2 Claim shall be satisfied in the form of a note given by the Debtor in favor of the Town the amount of the Sewer District's Allowed Secured Claim (the "Class 2 Note"). The Class 2 Note shall accrue interest at a rate of 8.0% *per annum* (representing prime plus 0.5%) and be amortized over a period of 7 (30) years. The Debtor shall make eighty-four (84) equal payments monthly on the Class 2 Note. The first monthly payment on the Class 2 Note shall be made on the Effective Date. The Debtor

may prepay the Class 2 Note at any time without penalty.

All collateral securing the Sewer District' Allowed Secured Claim shall secure the Class 2 Note.

### d.   First Boston Secured Claim (Class 3)

#### i   Description (Class 3)

Class 3 consists of the Allowed Secured Claims of First Boston prior to the Petition Date. On or about October 31, 2022, the Debtor entered into that certain loan agreement with First Boston pursuant to which the Debtor, along with 11 Webber and two other affiliated entities, borrowed the principal amount of $5,490,000.00 from First Boston (the "First Boston Loan #1").   The First Boston Loan #1 is secured by a Mortgage on the Real Property, together with certain real property owned by 11 Webber and the two other co-obligors, and by an Assignment of Rents relating to the same (the "First Boston Loan #1 Collateral"). On or about April 6, 2023, Debtor entered into an additional loan agreement with First Boston, pursuant to which the Debtor, along with 11 Webber and York Beach Surf Club, LLC ("YBSC"), borrowed the principal amount of $7,950,000.00 from First Boston (the "First Boston Loan #2" and together with the First Boston Loan #1, the "First Boston Secured Loans").   The First Boston Loan #2 is secured by a Mortgage on the Real  Property, certain real property owned by 11 Webber and YBSC, and by an Assignment of Rents relating to the same (the "First Boston Loan #2 Collateral").   The total amount outstanding under the First Boston Secured Loans as of the Petition Date (according to the proof of claim filed by First Boston) equaled $15,689,519.30 ($6,370,429.88 due under First Boston Loan #1 and $9,319,089.41 due under First Boston Loan #2).

#### ii.   Treatment and Security (Class 3)

The Allowed Class 3 Claim shall be satisfied in the form of a note given by the Debtor in favor of First Boston in the face amount of its Allowed Secured Claim (the "Class 3 Note") in the amount of *$8,373,667.71*. This amount represents the fair market value of the First Boston Loan #1 Collateral and the First Boston Loan #2 Collateral as of the Petition Date, minus the principal amount of the Class 1 Note and the Class 2 Note. The Class 3 Note shall accrue interest at a rate of 8.0% *per annum* (representing prime plus 0.5%) and be amortized over a period of thirty (30) years.

Class 3 Note payments shall be made on the following schedule: (a) fifteen (15) monthly installments consisting of interest only; and (b) sixty-nine (69) equal monthly payments of principal and interest. The remaining balance due on the Class 3 Note (the "Balloon Payment") shall be due thirty (30) days after the last monthly installment is made. The first monthly installment shall be made on the Effective Date. Debtor may prepay the Class 3 Note at any time without penalty.

All collateral securing the First Boston Loans as of the Petition Date shall secure the Class 3 Note after the Effective Date.

### e.   Clean Laundry Funding Secured Claim (Class 4)

#### i.   Description (Class 4)

Class 4 consists of the Allowed Secured Claims of Clean Laundry Funding prior to the Petition Date. On or about May 13, 2024, the Debtor entered into that certain Secured Promissory Note and Agreement

with Clean Laundry Funding pursuant to which the Debtor borrowed the principal amount of $24,526.80 from Clean Laundry Funding (the "Clean Laundry Secured Loan"). The Clean Laundry Secured Loan is secured by one (1) Electrolux ELD665 65 LB Washing Machine, including a 6" Steel Base and two (2) Electrolux ED- 645 45 LB Dryers (collectively, the "Clean Laundry Collateral"). The total amount outstanding under the Clean Laundry Secured Loan as of the Petition Date (according to the proof of claim filed by Clean Laundry Funding ) equaled **$24,267.96**.

### ii.      Treatment and Security (Class 4)

The Allowed Class 4 Claim shall be satisfied in the form of a note given by the Debtor in favor of Clean Laundry Funding in the face amount of its Allowed Secured Claim (the "Class 4 Note"). The Class 4 Note shall accrue interest at a rate of 8.0% *per annum* (representing prime plus 0.5%) and be amortized over a period of three (3) years. The Debtor shall make thirty-six (36) equal payments monthly on the Class 4 Note for a period of thirty-six (36) months. The first monthly payment on the Class 4 Note shall be made on the Effective Date. The Debtor may prepay the Class 4 Note at any time without penalty.

The Clean Laundry Collateral shall secure the Class 4 Note.

### f.      Ascentium Capital Secured Claim (Class 5)

### i.      Description (Class 5)

Class 5 consists of the Allowed Secured Claims of Regions Bank d/b/a Ascentium Capital ("Ascentium") prior to the Petition Date. On or about August 18, 2022, the Debtor entered into that certain Equipment Finance Agreement with Ascentium pursuant to which the Debtor was to make thirty-six (36) monthly payments of $1,296.82 to finance the purchase of Guest Wireless HSIA Network equipment (the "Ascentium Secured Loan"). The Ascentium Secured Loan is secured by the Guest Wireless HSIA Network equipment financed under such Equipment Finance Agreement (collectively, the "Ascentium Collateral"). The total amount outstanding under the Ascentium Secured Loan as of the Petition Date (according to the proof of claim filed by Ascentium) equaled **$31,345.13**.

### ii.      Treatment and Security (Class 5)

The Allowed Class 5 Claim shall be satisfied in the form of a note given by the Debtor in favor of Ascentium in the face amount of its Allowed Secured Claim (the "Class 5 Note"). Per the Ascentium proof fo claim, the secured portion of its Claim is $18,000. The Class 5 Note shall accrue interest at a rate of 8.0% *per annum* (representing prime plus 0.5%) and be amortized over a period of three (3) years. The Debtor shall make thirty-six (36) equal payments monthly on the Class 5 Note for a period of thirty-six (36) months. The first monthly payment on the Class 5 Note shall be made on the Effective Date. The Debtor may prepay the Class 5 Note at any time without penalty.

The Ascentium Collateral shall secure the Class 5 Note.

### g.      *Intentionally Left Blank* (Class 6)

### h.      Priority Tax Claims and Secured Tax Claims (Class 7)

### i.      Description (Class 7)

Class 7 consists of Allowed Priority Tax Claims granted priority under Section 507(a)(8) under the Bankruptcy Code, namely the Internal Revenue Service, the Maine Department of Labor [POC # 3], and the Maine Revenue Service.[3]

### ii.      Treatment (Class 7)

In accordance with Sections 1129(a)(9)(C) and (D) of the Bankruptcy Code, except as otherwise agreed by the Debtor and the applicable Claimant, each Holder of an Allowed Priority Tax Claim in Class 7 shall receive deferred Cash payments over a period not to exceed five (5) years after the Petition Date. Class 7 payments shall be made in five (5) equal annual installments and each installment shall include, pursuant to 11 U.S.C. § 511 and 28 U.S.C. § 1691 or 36 M.R.S.A § 186, as appropriate, simple interest accrued on the unpaid portion of such Allowed Priority Tax Claim at the Federal Judgment Rate in effect as of the Confirmation Date (for Allowed Federal tax claims of the Internal Revenue Service) or at the prime rate in effect on September 2, 2024 (for Allowed State tax claims). The Debtor reserves the right to pay any Allowed Priority Tax Claim in full at any time on or after the Effective Date and before the expiration of the five (5) year period at any time without penalty.

### j.      **General Unsecured Claims (Class 8)**

### i.      Description (Class 8)

Class 8 consists of General Unsecured Claims that are not Unclassified Claims or provided for under any other Class contained in the Plan, and Class 8 Claims shall include any deficiency Claim arising from operation of § 506 of the Bankruptcy Code. For avoidance of doubt, Class 8 Claims shall include, but not be limited to, any and all Allowed General Unsecured Claims of: (a) First Boston, (b) Clean Laundry Funding, (c) Ascentium; (d) York Water District and all claims of (i) Airwave Mechanical, Inc. (ii) Warren Mechanical, Inc. (iii) USAM I Fund, LLC; (v) Gammon LLC, and (vi) those set forth in the Schedules or Filed in a timely proof of Claim as General Unsecured Claims.

### ii.      Treatment (Class 8)

In full and final satisfaction, settlement, release, and discharge of any General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive five (5) annual Cash Distributions of its *pro rata* share of an amount equal to the Debtor's annual net operating income <u>minus</u> payments of the financial obligations set forth above in the treatments of Classes 1 to 7 <u>minus</u> an operating reserve equal to 10% of annual net operating income ("<u>Excess NOI</u>"). Excess NOI shall be calculated after the end of each calendar year and *pro rata* payments shall be made annually on or about April 15th of the next year. The first *pro rata* payment of Excess NOI-for calendar year 2025- shall be calculated after December 31, 2025, and made on or before April 15, 2026. To the extent that Excess NOI is unavailable under this formula for a given year, the Trust and/or Perkins will guarantee a minimum NOI payment of $25,000 per year. Per the Cash Flow Projection attached to the Plan as **Exhibit A**, the Debtor estimates that the total amount of Excess NOI to be distributed to holders of Allowed General Unsecured Claims over the five (5) year term is ***$1,307,680.38***.

### I.      **Equity Interests (Class 9)**

---

[3]      The deadlines for governmental entities to file proofs of claim is April 15, 2025. The Debtor is continuing to work with taxing authorities to determine the amount of claims for each authority, and Maine Revenue Services anticipates filing a Proof of Claim prior to April 15, 2025.

### i. Description (Class 9)

Class 9 consists of any and all equity interests in the Debtor.  Ninety percent (90%) of the equity interests of the Debtor are held by the Trust, and ten percent (10%) of the equity interest of the Debtor are held by Jack H. Lieberman ("Lieberman" and together with the Trust, the "Owners").

### ii. Treatment (Class 9)

The Owners shall continue as the only Interest Holders of the Debtor after the Confirmation Date. No equity distributions shall be made to the Owners premised on their Interests in the Debtor until such time as all other Claims have been satisfied under the Plan, absent agreement between the Owner and any Claimant otherwise entitled to the Distribution.  In the event either of the Owners make a loan to the Debtor either before or after the Confirmation Date, the terms of this Class 9 treatment shall not prevent the Debtor from making loan payments to the such Owner in accordance with the applicable loan documents.

**3.    General Claim Treatment Provisions and Liens**

Except as may otherwise be provided for in the Plan, the failure of any party to object to any Claim in the Case shall be without prejudice to the rights of the Debtor to contest, object to, or otherwise defend against such Claim if and when such Claim is sought to be enforced by the Holder of such Claim. Notwithstanding § 1141(c) or any other provision of the Bankruptcy Code, all Prepetition liens on Assets of the Debtor held with respect to any Allowed Secured Claim shall survive the Effective Date and continue in accordance with the terms of the Plan until such Allowed Secured Claim is satisfied upon the terms provided for by the Plan, at which time such lien shall be released, shall be deemed null and void, and shall be unenforceable for all purposes; provided, however, that the Debtor may condition delivery of any final payment upon receipt of an executed release of the lien. Any and all liens securing any Secured Claim that is not an Allowed Claim shall be released, shall be deemed null and void, and shall be unenforceable for all purposes. Nothing in the Plan shall preclude the Debtor from challenging the validity of any alleged lien, including a mortgage, security interest, or other charge, on any Asset or the value of the Asset that secures any alleged lien, and all such rights are expressly preserved.

The Debtor, pursuant to §§ 502(b)(1) and 558 of the Bankruptcy Code and applicable non-bankruptcy law, may set off against any Allowed Claim, and the Distributions to be paid under the Plan, the Claims, rights, and Causes of Action of any nature that the Debtor may have against the Holder of such Allowed Claim, including any surcharge rights under § 506(c) of the Bankruptcy Code; provided, however, that neither the failure to effect such a setoff, nor the allowance of any Claim under the Plan, shall constitute a waiver or release by the Debtor of any such claims, rights, and Causes of Action that the Debtor may have against such Holder.

**4.    Estimated Range of Potential Recoveries for Impaired Classes of Claims**

The estimated potential range of recovery to Holders of Allowed Claims in the Classes of Impaired Claims is set forth in the chart below.  Matters arising during Confirmation or in the process of allowance of a particular Claim could impact any Distributions.

| Class | Type of Claim | Estimated Recovery | Entitled to Vote |
|-------|---------------|--------------------|------------------|

| Class 1 | Town Secured Claim | 100% | Yes |
|---|---|---|---|
| Class 2 | Sewer District Secured Claim | 100% | Yes |
| Class 3 | First Boston Secured Claim | 100% | Yes |
| Class 4 | Clean Laundry Funding Secured Claim | 100% | Yes |
| Class 5 | Ascentium Capital Secured Claim | 100% | Yes |
| Class 6 | N/A | | |
| Class 7 | Priority and Secured Tax Claims | 100% | Yes |
| Class 8 | General Unsecured Claims | TBD[4] | Yes |
| Class 9 | Equity Interests | N/A | Yes |

**5.    Means for Executing the Plan**

The Plan requires the Debtor to make certain payments to Holders of Allowed Claims. These payments will be generated from one or more of the following sources:

- o **Revenue from Business Operations**: As evidenced by the Cash Flow Projections, the Debtor expects to generate significant revenue from operations on a going forward basis. That revenue will be the primary source of funding for the Debtor's Plan obligations until the Class 3 Ballon Payment comes due.

- o **Financing From Affiliated Entities**. If necessary, Perkins, the Trust, and/or affiliated persons or entities may contribute equity or debt to assist the Debtor in meeting its Plan obligations. If any cash is contributed as a loan or debt, any repayment obligations as to the same shall be expressly subordinated to the Plan obligations set forth herein.

- o **Third-Party Financing**.  The Debtor anticipated borrowing from a third-party lender or lenders to make the Class 3 Note Ballon Payment when it comes due.

- o **Recoveries from Causes of Action**. The Debtor may pursue various Causes of Action, if the Debtor believes that it will likely recover certain amounts from these Causes of Action. The proceeds from the recoveries on any Causes of Action the Debtor chooses to pursue

---

[4]      As noted above, the deadline for governmental entities, including Maine Revenue Service is April 15, 2025. Until that deadline has passed, the Debtor is unable to provide a reliable estimate of this recovery range. The Debtor will amend this aspect of the Disclosure Statement after the April 15 deadline passes.

are not expected to be material.

The Confirmation Order grants the Debtor express authority to sell, convey, transfer, and/or assign any or all of the Assets in order to make payments under the Plan and/or to operate (and make operational changes to) the Debtor's business. Additionally, after the Confirmation Date, the Debtor shall be authorized to take all actions necessary to prosecute or not prosecute, as the Debtor deems appropriate, any and all Causes of Action. The Debtor's officers and directors on the Confirmation Date are expected to be the same officers and directors that existed during the course of the Case.

Except as may otherwise be provided in the Plan, on and after the Confirmation Date, all Assets shall vest in the Debtor free and clear of all Claims, liens, charges, other encumbrances, interests, or defenses (including recoupment) of any Holder of a Claim to the maximum extent permitted under § 1141 of the Bankruptcy Code.

## 6.      **Jurisdiction**

The Plan proposes that the Bankruptcy Court shall retain and have jurisdiction over any matter arising under the Bankruptcy Code, arising in or relating to the Case or the Plan, to the fullest extent permitted by law, including, but not limited to, the following matters:

(a)    To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or Interest, including, without limitation, any Administrative or Priority Claim;

(b)    To hear and determine all Claims arising from rejection of any executory contract or unexpired lease and to consummate the rejection and termination thereof;

(c)    To liquidate damages in connection with any disputed, contingent, or unliquidated Claims;

(d)    To adjudicate all Claims to, or ownership of any Assets of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

(e)    To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken prior to the Effective Date;

(f)    To make such orders as necessary and appropriate to construe or effectuate the provisions of the Plan;

(g)    To hear and determine any and all Causes of Action;

(h)    To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of Professional Fees and Expenses , and all other Administrative Claims which may be pending on, or made after, the Confirmation Date;

(i)    To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

24

(j) To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Chapter 11 Case, or any controversy or dispute which may affect the Debtor's ability to implement or fund the Plan; and

(k) To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

If the Bankruptcy Court abstains from exercising jurisdiction or is without jurisdiction over any matter, then this section shall not effect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

**ALL CREDITORS THAT FILED PROOFS OF CLAIM IN THE CASE SHALL BE DEEMED TO HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT FOR ALL PURPOSES WITH RESPECT TO SUCH CLAIMS.**

7. **Treatment of Executory Contracts and Unexpired Leases**

    a. **Assumed Contracts**

Under the Plan, the following contracts or unexpired leases are assumed by the Debtor as of the Effective Date (collectively, the "Assumed Contracts"):

- Hotel Management Agreement with Scout Hotel & Resort Management, LLC
    - Property management contract
    - Cure amount: $0.00

- Expedia Lodging Agreement with Expedia, Inc.
    - On-Line Reservations contract
    - Cure amount: $0.00

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption, as of the Effective Date, pursuant to §§ 365(a) and 1123 of the Bankruptcy Code.

Any party to an Assumed Contract that disputes: (i) the cure amount (or lack thereof); (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the applicable Assumed Contract; or (iii) any other matter pertaining to assumption of an Assumed Contract, including the credit terms proposed, if any, must file an objection on or before the deadline to object to Confirmation of the Plan. Failure to file an objection to the assumption of an Assumed Contract within the applicable timeframes set forth herein, shall be deemed consent to the cure amount (or lack thereof) on the Schedule of Assumed Contracts and payment terms for the same. Certain of the cure payment amounts and terms as reflected on the Schedule of Assumed Contracts may be the result of agreements reached between the Debtor and the counterparty to the Assumed Contract. The Confirmation Order shall constitute approval by the Bankruptcy Court for the Debtor to enter into such compromises. A dispute regarding the Debtor's assumption of any Assumed Contract shall be subject to the jurisdiction of the Bankruptcy Court.

### b. Rejection of Executory Contracts and Leases

Under the Plan, unless identified as an Assumed Contract on the Schedule of Assumed Contracts, all executory contracts or unexpired leases are rejected as of the Confirmation Date (the "Rejected Contracts").

**IF THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE RESULTS IN DAMAGES TO THE OTHER PARTY OR PARTIES TO SUCH CONTRACT OR LEASE, THEN ANY CLAIM FOR SUCH DAMAGES, IF NOT PREVIOUSLY EVIDENCED BY A FILED PROOF OF CLAIM, SHALL BE FOREVER BARRED AND SHALL NOT BE ENFORCEABLE AGAINST THE ESTATE, THE DEBTOR, ITS ASSETS OR AGENTS, OR SUCCESSORS OR ASSIGNEES, UNLESS A PROOF OF CLAIM IS FILED WITH THE BANKRUPTCY COURT AND SERVED UPON COUNSEL FOR THE DEBTOR ON OR BEFORE THIRTY (30) CALENDAR DAYS AFTER THE LATER TO OCCUR OF: (A) THE CONFIRMATION DATE; OR (B) THE DATE OF ENTRY OF AN ORDER BY THE BANKRUPTCY COURT AUTHORIZING REJECTION OF A PARTICULAR EXECUTORY CONTRACT OR UNEXPIRED LEASE. REJECTION DAMAGE CLAIMS SHALL BE CLASSIFIED AS GENERAL UNSECURED CLAIMS AND SHALL BE TREATED AS CLAIMS IN CLASS 8 UNDER THE PLAN.**

### c. Reservation of Rights with Respect to Assumed or Rejected Contracts

Under the Plan, the Debtor reserves the right to add or delete contracts from the Schedule of Assumed Contracts until fifteen (15) days prior to the date of the Confirmation Hearing. The Debtor, on the same day that such addition or deletion is filed or as soon as is reasonably practicable thereafter, shall notify the non-Debtor counterparty to the Assumed Contract. If the change is to the Schedule of Assumed Contracts, then the notice shall contain an explanation of the counterparty's right to object to the cure amount or the assumption of the Assumed Contract for other reasons. Such notice shall be delivered by facsimile, electronic mail, or, if neither of those methods is available, by overnight delivery.

### 8. Effect of Confirmation of the Plan

**There are important provisions contained in the Plan that are not restated in this Disclosure Statement. You are encouraged to read the Plan carefully. The following is a summary of certain provisions contained in the Plan:**

### a. Binding Effect of Confirmation

Confirmation will bind the Debtor, all Creditors, Holders of Interests, and any other party in interest to the provisions of the Plan. If the Plan is confirmed by the Bankruptcy Court, then the treatment of Claims set forth in the Plan supersedes and replaces any agreements or rights the Holders of Claims have in or against the Debtor and/or the Estate and/or the Assets.

### b. Good Faith

Confirmation of the Plan shall constitute a finding that the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code. There is no offer, issuance, sale, or purchase of any security under the Plan. To the extent a court concludes otherwise, Confirmation of

the Plan shall constitute a finding that such offer, issuance, sale, or purchase has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

### c.    Exculpation

On or after the Confirmation Date, the Debtor, the Trust, Perkins, Marcus | Clegg and its attorneys and employees (collectively, the "Exculpation Parties") shall not have or incur any liability for, and are expressly exculpated, released, and discharged from any claim or any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of: (i) the Debtor's operations between the Petition Date and the Confirmation Date; (ii) the Chapter 11 Case; (iii) the administration of the Debtor's cash and other property after the Petition Date; (iv) the pursuit of confirmation of the Plan or any other plan; (v) the formulation, preparation, dissemination, implementation, administration, confirmation, or consummation of this Plan; (vi) any other act taken or omitted to be taken in connection with the Debtor's business during the Chapter 11 Case; or (vii) any contract, instruction, release, or other agreement entered into or created in connection with the foregoing, except only for actions or omissions to act to the extent determined by a court of competent jurisdiction (with such order becoming a final, non-appealable order) to be by reason of such party's gross negligence, willful misconduct, or fraud, and in all respects, such party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; it being expressly understood that any act or omission with the approval of the Bankruptcy Court shall be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud, unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation (collectively, the "Released Acts").

As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in this Plan, all past or present Holders of Claims or Interests, directly or indirectly, shall release, and be deemed to forever release and discharge, the Exculpation Parties from the Released Acts and shall be precluded and permanently enjoined from: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a right of subrogation of any kind against any debt, liability, or obligation due to the Debtor and/or the Estate; and (v) commencing or continuing any action, in any manner or in any place, against the Exculpation Parties that does not comply with or that is inconsistent with the provisions of this Plan. For avoidance of doubt, the exculpation provisions herein shall not apply to any conduct that occurred (i) prior to the Petition Date or (ii) after the Confirmation Date of the Plan.

### d.    Debtor Injunction

Except as otherwise expressly provided in this Plan, or the Confirmation Order, on and after the Confirmation Date, all persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtor, the Assets, or the Estate that arose prior to the Confirmation Date (including, but not limited to, states and other governmental units, and any state official, employee, or other entity acting in an individual or official capacity on behalf of any state or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against the Debtor or any Assets of the Debtor; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtor or any Assets of

27

the Debtor; (iii) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor or any Assets of the Debtor; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligations due to the Debtor or any Assets of the Debtor; and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan.  Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article IV shall prohibit the Holder of a disputed Claim from litigating its right to seek to have such disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such disputed Claim of any of the obligations of the Debtor under this Plan. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or cause of action against the Debtor or any Assets of the Debtor based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Claim on which the payments due under this Plan have been made or are not yet due under this Plan.

### e.    Discharge of Debtor

Except as may otherwise be provided in the Plan: (i) the rights afforded under the Plan and the treatment of all Claims and Interests therein, shall be in exchange for and in complete satisfaction, discharge, and release of Claims (and any defenses thereto or based upon such Claims, including recoupment) and Interests of any nature whatsoever against the Debtor, the Estate, and/or any of the Assets; (ii) on the Effective Date, all such Claims provided for under the Plan against the Debtor, the Estate and/or the Assets shall be satisfied, discharged, and released in full, as provided for under the Plan as well as any defenses based upon such Claims, including recoupment; and (iii) all Persons and entities shall be precluded from asserting against the Debtor, the Estate, their successors, or the Assets, any Claims (or defenses arising therefrom) based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, except as may be specifically authorized under the Plan with respect to Claims for which further proceedings are permitted under the Plan.  Entry of the Confirmation Order shall provide the Debtor the full effect of the discharge provided for under § 1141(d) of the Bankruptcy Code.

### f.    No Admissions

Except as specifically provided in the Plan, nothing contained in the Plan or this Disclosure Statement shall be deemed or construed in any way as an admission by the Debtor and/or the Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any Assets.  Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, then the Plan shall be null and void, and nothing contained in the Plan shall: (i) be deemed to be an admission by the Debtor and/or the Estate with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (ii) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any claims held by the Debtor and/or the Estate; or (iii) prejudice in any manner the rights of the Debtor and/or the Estate in any further proceedings.

### 9.    Miscellaneous Additional Provisions

### a.    Holders of Claims and Interests as of Effective Date

All Distributions under the Plan shall be tendered to the Person that is the Holder of the Allowed Claim as of the Effective Date, unless the Debtor receives a written notice of a change of address.

### b.     Successors and Assigns

The rights, benefits, and obligations of any Person or entity subject to, named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or entity.

### c.     Reservation of Rights

The Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, except as expressly set forth in the Plan or this Disclosure Statement. The filing of the Plan, the statements or provisions therein, or the taking of any action by the Debtor with respect to the Plan or the Disclosure Statement shall not be, or shall not be deemed to be, an admission or waiver of any rights of the Debtor and/or the Estate with respect to the Holders of Claims or Interests prior to the Effective Date.

### d.     Post-Confirmation Effectiveness of Proofs of Claim

Except as may otherwise be provided in the Plan, proofs of claim shall, upon the Effective Date, represent only the right to participate, to the extent the proofs of claim become Allowed Claims, in the Distributions contemplated by the Plan and otherwise shall have no further force or effect.

### e.     Services by and Fees for Professionals

Fees and expenses for the Professionals retained by the Debtor for services and costs incurred after the Petition Date and prior to the Confirmation Date, as well as fees and expenses incurred by those Professionals for the preparation of their final fee applications, shall be fixed by the Bankruptcy Court after notice and a hearing, and such fees and expenses shall be paid (less deductions for any and all amounts thereof already paid to such Professional) after approval by the Bankruptcy Court, to the extent so approved and as provided in the Plan.

### f.     Severability of Plan Provisions

If, before Confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, then the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible, consistent with the original purpose of that term or provision. That term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions shall remain in full force and effect and will in no way be affected, impaired or invalidated.

The Confirmation Order shall constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this section, is valid and enforceable under its terms. Should any provision in the Plan be determined to be unenforceable after Confirmation, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

29

### g.    Governing Law

The rights and obligations under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maine without giving effect to Maine's conflict-of- laws principles, unless a rule of law or procedure is supplied by: (i) federal law (including the Bankruptcy Code or Bankruptcy Rules); or (ii) an express choice-of-law provision in any document provided for or executed under or in connection with, the Plan.

### h.    Final Decree

Once the Plan has been substantially consummated, the Debtor shall, as soon as is reasonably practicable, file a motion with the Bankruptcy Court to obtain a final decree to close the Case.

## V.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor believes that the Plan is in the best interests of Creditors and Holders of Claims and Interests and that it should be accepted and confirmed. If the Plan as proposed, however, is not confirmed, then the following alternatives may be available to the Debtor: (i) liquidation under chapter 7 of the Bankruptcy Code; (ii) the Debtor or another party could propose an alternative chapter 11 plan; or (iii) the Case could be dismissed.

## A.    Chapter 7 Liquidation

The Debtor believes that, if required, a liquidation under chapter 7 in accordance with the priority rules of the Bankruptcy Code would result in smaller Distributions being made to Creditors than those provided for under the Plan.  The liquidation analysis is set forth more fully in the Best Interests Test Section above.

## B.    Alternative Chapter 11 Plan

If the Plan is not confirmed, the Debtor may propose a different plan, which might involve an alternative means for the reorganization or liquidation of the Assets. However, it is difficult to speculate on or assess the terms and potential treatment of Allowed Claims under any such alternative plan. Furthermore, for the Debtor or Creditors to formulate, solicit, and confirm any such alternative plan would likely require the Estate to incur additional administrative and other expenses, may substantially delay distributions to Creditors, and may result in lower recoveries to Creditors than the proposed Plan. The Debtor believes that the terms of the Plan, in conjunction with the timing of the Plan, provide the realization of the most value for Holders of Claims against the Debtor and/or the Estate.

## C.    Dismissal of this Case

Dismissal of the Case would have the effect of restoring (or attempting to restore) all parties to the status quo.  Upon dismissal of the Case, the Debtor would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time-consuming process of negotiation with the various creditors of the Debtor, and possibly resulting in costly and protracted litigation with numerous parties.

Dismissal would also permit unpaid unsecured creditors to obtain and enforce judgments against the

Debtor. The Debtor believes that these actions could lead ultimately to the liquidation of the Assets under chapter 7 of the Bankruptcy Code or a state law receivership. Therefore, the Debtor believes that dismissal of the Case is not a preferable alternative to the Plan.

## VI.    CERTAIN FEDERAL TAX CONSEQUENCES

### A.    General

This discussion is intended only as a summary of certain tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. This discussion is for informational purposes only and is not tax advice. The tax consequences of the Plan may be uncertain or vary depending on particular facts and circumstances.

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE; (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT ADVISOR.**

### B.    U.S. Federal Income Tax Consequences to the Debtor

The Debtor does not expect the implementation of the Plan to have any adverse federal income tax consequences on the Debtor before or after the Effective Date.

### C.    U.S. Federal Income Tax Treatment with Respect to Holders of Allowed Claims

Holders of Allowed Claims as of the Effective Date are encouraged to seek independent tax advice about the tax consequences of the Plan and participation in Distributions thereunder. The tax consequences could vary based on the facts and circumstances of a particular Holder's Claim, the extent to which payment of the same is on account of interest or principal, or other factors. The Debtor does not, and its Professionals do not, intend that the Plan or Disclosure Statement provide tax advice to any party.

## VII.    RISK FACTORS IN CONNECTION WITH THE PLAN

The Holders of Claims and Interests against the Debtor should read and carefully consider the following risk factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together with this Disclosure Statement or thereafter) before deciding whether to vote to accept or reject the Plan. These risk factors should not, however, be regarded as constituting the only risks associated with the Plan and its implementation.

**A.**      **Bankruptcy Considerations**

Although the Debtor believes that the Plan does or will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there are no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for Confirmation or that such modifications would not necessitate the re- solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction of the conditions precedent set forth in the Plan, and there can be no assurance that such conditions will be satisfied.  In the event the conditions precedent described in the Plan have not been satisfied as of the Effective Date, then the Confirmation Order shall be vacated, no Distributions shall be made pursuant to the Plan, and the Debtor and all Holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

**AS TO EACH IMPAIRED CLASS THAT HAS NOT ACCEPTED THE PLAN, THE PLAN MAY BE CONFIRMED IF THE BANKRUPTCY COURT DETERMINES THAT THE PLAN "DOES NOT DISCRIMINATE UNFAIRLY" AND IS "FAIR AND EQUITABLE" WITH RESPECT TO THESE CLASSES.  THE DEBTOR BELIEVES THAT THE PLAN SATISFIES THESE REQUIREMENTS.  NEVERTHELESS, THERE CAN BE NO ASSURANCE THAT THE BANKRUPTCY COURT WILL REACH THE SAME CONCLUSION.**

**B.**      **No Duty to Update Disclosures**

The Debtor has no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Debtor is required to do so pursuant to an order of the Bankruptcy Court.  Delivery or service of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

**C.**      **Representations Outside this Disclosure Statement**

This Disclosure Statement contains representations concerning or related to the Debtor and the Plan that are authorized by the Bankruptcy Code and the Bankruptcy Court.  Please be advised that any representations or inducements made outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by Holders of Claims that are entitled to vote to accept or reject the Plan.

**D.**      **No Admission**

The information and representations contained herein shall not be construed to constitute an admission of, or be deemed evidence of, any legal effect of the Plan or the Debtor.

**VIII.      RECOMMENDATION AND CONCLUSION**

The Debtor believes that the Plan provides the best available alternative for maximizing the recoveries that Creditors may receive from the Debtor.  The Debtor, therefore, recommends that all Creditors that are entitled to vote on the Plan vote to accept the Plan.

32

Dated:  April 1, 2025

**BEACH HOUSE, LLC**

/s/David C. Johnson
David C. Johnson
Jennie L. Clegg
Brendan T. Barry

Attorneys for the Debtor

MARCUS|CLEGG
16 Middle Street, Suite 501
Portland, ME  04101
(207) 828-8000
bankruptcy@marcusclegg.com