## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re:

**BEACH HOUSE, LLC,**[1]

        **Debtor.**

**Chapter 11**

**Case No. 24-20211**

## AMENDED PLAN OF REORGANIZATION OF BEACH HOUSE, LLC
## DATED MAY 16, 2025

By and through:

    **David C. Johnson, Esquire**
    **Brendan T. Barry, Esquire**
    **MARCUS, CLEGG**
    **Portland, Maine 04101**
    **(207) 828-8000**
    dcj@marcusclegg.com
    jlc@marcusclegg.com
    btb@marcusclegg.com

    **Attorneys For Beach House, LLC**

---

[1]    The last four digits of the taxpayer identification number of Beach House, LLC's federal taxpayer identification number are 5994.  *See* 11 U.S.C. § 342(c)(1).  The principal place of business and address for  216 Long Sands Road Street, York, ME 03909

## **TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................................... 3

II.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
       AND GOVERNING LAW ........................................................................................... 3

III.   UNCLASSIFIED CLAIMS ........................................................................................ 13

IV.    CLASSIFIED CLAIMS AND INTERESTS ............................................................... 19

V.     EXECUTORY CONTRACTS AND LEASES ........................................................... 28

VI.    PLAN IMPLEMENTATION ..................................................................................... 30

VII.   LITIGATION ............................................................................................................ 31

VIII.  OBJECTIONS TO CLAIMS AND DISTRIBUTIONS ............................................. 34

IX.    MODIFICATION, WITHDRAWAL, AND REVOCATION OF THIS PLAN OR
       CONFIRMATION ORDER ...................................................................................... 38

X.     EFFECT OF CONFIRMATION OF THIS PLAN ..................................................... 39

XI.    RETENTION OF JURISDICTION ........................................................................... 44

XII.   MISCELLANEOUS PROVISIONS OF THE PLAN ................................................. 45

# I.    INTRODUCTION

Beach House, LLC is the debtor and debtor-in-possession in this chapter 11 bankruptcy case. The Debtor[1] commenced this Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 17, 2024.

The Plan is a reorganization plan under chapter 11 of the Bankruptcy Code.  It provides for the payment of Allowed Claims against the Debtor and/or its Estate to the extent and on the terms and conditions of this Plan.

**All Holders of Claims and Interests are encouraged to read this Plan in its entirety. Confirmation of this Plan is intended to and shall result in full and final satisfaction of any and all Claims or Interests that the Holders of such Claims or Interests may have against the Debtor and/or its Estate, as well as any defenses of any kind based on Claims provided for under this Plan or in existence prior to the Confirmation Date.**

# II.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

## A.    Defined Terms

In addition to other terms defined elsewhere in this Plan, the following terms, which appear in this Plan as capitalized words, have the following meanings:

"11 Webber" means 11 Webber Holdings, LLC, and all predecessors, successors and/or assignees of 11 Webber.

"503(b)(9) Claim" means a Claim for the value of goods received by the Debtor in the ordinary course of its business within twenty (20) calendar days before the Petition Date, as provided for under § 503(b)(9) of the Bankruptcy Code.

---

[1]    Capitalized terms, not specifically defined when the capitalized term is first utilized herein, shall have the meaning ascribed to such terms in Section II of this Plan.

"<u>Administrative Claim</u>" means a claim for administrative costs or expenses that is allowable under §§ 365(b) or 503(b) of the Bankruptcy Code or under 28 U.S.C. § 1930, including, without limitation: (i) Non-Ordinary Course Administrative Claims; and (ii) Ordinary Course Administrative Claims.

"<u>Administrative Tax Claim</u>" means a Claim that a governmental unit asserts against the Debtor for taxes or related interest or penalties that is allowable under § 503(b) of the Bankruptcy Code.

"<u>Allowed Administrative Claim</u>" means an Allowed Claim that is an Administrative Claim.

"<u>Allowed Claim</u>" means: (i) a Claim, as to which no proof of claim has been timely Filed, that is (a) listed in the Schedules in an amount greater than zero and not in an unknown amount, (b) not listed in the Schedules as disputed, contingent, or unliquidated, and (c) as to which no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or a Final Order of the Bankruptcy Court, or (d) as to which any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by a Final Order of the Bankruptcy Court; or (ii) a Claim as to which a proof of claim has been timely Filed and to which (a) no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or a Final Order of the Bankruptcy Court, or (b) any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by a Final Order of the Bankruptcy Court.

"<u>Allowed Priority Tax Claim</u>" means an Allowed Claim that is a Priority Tax Claim.

"<u>Assets</u>" means "property of the estate" as described in § 541 of the Bankruptcy Code, including, but not limited to, Cash, Causes of Action, proceeds of insurance and insurance policies, all real and personal property (including rights or interests in any bonds that may have been posted by the Debtor), all files, books,

and records of the Debtor and/or the Estate, and all other property of any kind or nature owned by the

Debtor or in which the Debtor asserts an interest.

"Assumed Contracts" means any executory contracts and unexpired leases that the Debtor has

assumed or will assume pursuant to § 365 of the Bankruptcy Code upon the Effective Date of this Plan.

"Avoidance Causes of Action" means all Causes of Action arising under §§ 544, 545,

547, 548, 549, and 550 of the Bankruptcy Code, and subject to § 546 of the Bankruptcy Code.

"Avoidance Recoveries" means recoveries from all Avoidance Causes of Action through settlement

or entry of a Final Order with respect to any specific Avoidance Causes of Action.

"Bankruptcy Code" means chapter 11 of title 11 of the United States Code as in effect as of the

Petition Date.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Maine.

"Bankruptcy Rules" or "Bankruptcy Rule" means the Federal Rules of Bankruptcy Procedure

and/or any applicable local rules of procedure or any one such rule, as indicated by the context.

"Business Day" means any day other than a Saturday, Sunday, or a legal holiday (as defined in

Bankruptcy Rule 9006(a)).

"Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor

and bearing a Case Number of 24-20211 and pending in the Bankruptcy Court.

"Cash" means United States dollars transmitted via wire transfer, ACH transfer and/or check at

the sole discretion of the Debtor.

"Cash Flow Projections" means projections forecasting the Debtor's future financial

performance as attached hereto as ***Exhibit A***.

"Causes of Action" means any and all claims, demands, rights, actions, suits, causes of action,

third-party claims, counterclaims and cross-claims of, or liabilities or obligations owing to, the Debtor

and/or the Estate of any kind or character whatsoever, known or unknown, suspected or unsuspected,

whether arising prior to, on or after the Petition Date, in contract or in tort or otherwise, at law or in equity or under any other theory, that the Debtor and/or the Estate has or asserts or may have or assert, whether or not brought as of the Effective Date, and which have not been settled or otherwise resolved by a Final Order as of the Effective Date, including, but not limited to: (i) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (ii) the right to object to Claims or Interests; (iii) such claims and defenses as fraud, mistake, duress, and usury; (iv) causes of action under Chapter V of the Bankruptcy Code (including Avoidance Causes of Action); (v) claims for tax refunds; (vi) claims to recover outstanding accounts receivable; (vii) any other claims which may be asserted against other Persons; and (viii) all claims and possible claims described in the Plan.

"Claim" means a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor and/or the Estate.

"Claimant" means any Person who holds an Allowed Claim against the Debtor and/or the Estate.

"Claims Bar Dates" means, in addition to those bar dates that may be described elsewhere in this Plan, the bar dates for filing Claims against the Debtor and/or the Estate established by the Bankruptcy Court as follows: (a) February 19, 2025, for all Claims arising prior to the Petition Date (unless a different date is set by a Final Order of the Bankruptcy Court), excepting Claims of governmental units (as defined by the Bankruptcy Code); and (b) April 15, 2025, in relation to Claims arising prior to the Petition Date of governmental units.

"Claims Objection Deadline" means the deadline for the Debtor to File objections to any asserted Claim, including 503(b)(9) Claims, Priority Tax Claims, Priority Non-Tax Claims, and General Unsecured Claims, which is no later than ninety (90) days after the Effective Date, unless, upon motion of the Debtor, the Bankruptcy Court extends such deadline, as set forth in this Plan.

"Confirmation" means the entry of an Order by the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

6

"<u>Confirmation Date</u>" means the date on which the Confirmation Order becomes a Final Order.

"<u>Confirmation Hearing</u>" means a hearing or any number of hearings conducted by the Bankruptcy Court regarding Confirmation of this Plan.

"<u>Confirmation Order</u>" means the Final Order confirming this Plan entered by the Bankruptcy Court.

"<u>Creditor</u>" means the Holder of a Claim against the Debtor.

"<u>Cure Claim</u>" means the right to payment of Cash or the Distribution of other Assets (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor, or as otherwise required by § 365(b) of the Bankruptcy Code as a condition of assumption or assumption and assignment of such executory contract or unexpired lease, so that the Debtor may assume or assume and assign the contract or lease pursuant to §§ 365 or 1123(b)(2) of the Bankruptcy Code.

"<u>Debtor</u>" means Beach House, LLC in every capacity, including as a debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code and as the reorganized debtor emerging from chapter 11 through this Plan.

"<u>Disallowed Claim</u>" means a Claim or any portion thereof that: (i) has been disallowed by agreement or by Final Order of the Bankruptcy Court; (ii) is Scheduled in an unknown amount or as zero or as contingent, disputed, or unliquidated, or is not Scheduled and as to which no proof of claim or Administrative Claim has been Filed; or (iii) has been withdrawn by the Creditor.

"<u>Disputed Claim</u>" means any Claim that is not an Allowed Claim or a Disallowed Claim.

"<u>Distribution</u>" means any transfer by the Debtor under this Plan of Assets, which includes Cash, to a Holder of an Allowed Claim or the release of any Claims of the Debtor and/or the Estate against the Holder of an Allowed Claim.

"<u>Effective Date</u>" means the first Business Day that is fifteen (15) days following the entry of the

7

Confirmation Order.

"Estate" means the estate created in the Case under § 541 of the Bankruptcy Code.

"Exit Funding" means that certain loan or loans that shall be provided by the Trust, Perkins and/or another third-party lender upon the entry of the Confirmation Order or after entry of the Confirmation Order to be used as provided for under this Plan.

"File" or "Filed" means duly and properly filed with the Bankruptcy Court and reflected on the Bankruptcy Court's official docket for this Case.

"Final Order" means an order or judgment of the Bankruptcy Court entered on the Bankruptcy Court's docket: (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which (i) the time to appeal or seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending, or (ii) any such appeal or petition has been dismissed or resolved by agreement of the parties or by the highest court to which the order or judgment was appealed, or from which review, rehearing, remand, or a writ of certiorari was sought.

"First Boston" means First Boston Construction Holdings, LLC and all predecessors, successors and/or assignees of First Boston.

"General Unsecured Claims" means Prepetition Claims that are not Secured Claims, Administrative Claims, Priority Tax Claims, or Priority Non-Tax Claims.

"Holder" means the owner of a Claim against or Interest in the Debtor, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferee to be deemed the Holder of the Claim for Distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either: (i) no objection to the transfer having been Filed; or (ii) any objection to such transfer having been resolved in favor of the transferor.

"Impaired" means, when used with respect to a Claim or Interest, the legal, equitable, and/or

contractual rights to which a Holder of a Claim or Interest is entitled when altered by this Plan.

"Interest" means the interest, as the term "interest" is defined in § 101(17) of the Bankruptcy Code, of any Person or trust agreement, including the Trust, which holds an equity security in the Debtor, to the extent applicable, no matter how held.

"IRS" means the United States Internal Revenue Service, part of the United States Department of the Treasury, a federal agency that is responsible for the collection and enforcement of certain taxes.

"Judgment Rate" means the interest rate as set forth in 28 U.S.C. § 1961(a) on a federal judgment entered on the Petition Date.

"Lieberman" means Jack H. Lieberman.

"Non-Ordinary Course Administrative Claim" means Cure Claims, 503(b)(9) Claims, Professional Fee Claims, U.S. Trustee Fees, and Claims arising under §§ 503(b)(3)(D) and/or 503(b)(4) of the Bankruptcy Code, provided, however, the term specifically excludes Ordinary Course Administrative Claims.

"Non-Ordinary Course Administrative Claim Bar Date" means, with respect to Non-Ordinary Course Administrative Claims, the date by which the Holders of Non-Ordinary Course Administrative Claims must File a motion for allowance of such Claims, which deadline is sixty (60) calendar days after the Effective Date.  Notice of the actual date upon which the Non-Ordinary Course Administrative Claims Bar Date falls shall be set forth in the Notice of the Effective Date (defined below) of the Plan that shall be served on parties-in-interest within fourteen (14) calendar days of the Effective Date.

"Non-Priority Wage Claims" means Prepetition Claims for wages, salaries, commissions, vacation, severance, and/or sick leave pay and certain benefits, all as described in §§ 507(a)(4) and (5) of the Bankruptcy Code, but which do not qualify as Priority Wage Claims.

"Ordinary Course Administrative Claim" means an Administrative Claim for administrative costs or expenses that were incurred in the ordinary course of the Debtor's operations and are allowable under

§ 503(b) of the Bankruptcy Code, provided, however, the term specifically excludes Non-Ordinary Course Administrative Claims.

"Perkins" means Taylor Perkins.

"Person" means the same as the term "person" as defined in § 101(41) of the Bankruptcy Code.

"Petition Date" means October 17, 2024.

"Plan" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as altered, amended, or modified from time to time.

"Plan Documents" means any and all documents necessary to effectuate this Plan.

"Postpetition" means the time from and after the Petition Date through the Effective Date.

"Prepetition" means the Petition Date itself and all time prior to the Petition Date.

"Prepetition Claim" means a Claim that arose prior to the Petition Date.

"Priority Non-Tax Claims" means Prepetition Claims that are referred to in § 507(a) of the Bankruptcy Code, other than § 507(a)(8), that are not Administrative Claims and that are not required to be classified by this Plan.

"Priority Tax Claims" means Prepetition Claims entitled to priority against the Debtor under § 507(a)(8) of the Bankruptcy Code.

"Priority Wage Claims" means Prepetition Claims for wages, salaries, commissions, vacation, severance, and/or sick leave pay and certain benefits as described in §§ 507(a)(4) and (5) of the Bankruptcy Code. Priority Wage Claims fall within the definition of Priority Non-Tax Claims.

"Professionals" means those Persons providing advisory or consulting services to the Debtor: (i) retained pursuant to an order of the Bankruptcy Court in accordance with §§ 327, 363, 1103, or 1106 of the Bankruptcy Code and compensated for services rendered prior to the Confirmation Date pursuant to §§ 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (ii) for which compensation and reimbursement

10

has been allowed by the Bankruptcy Court pursuant to §§ 330 and 503(b)(2) of the Bankruptcy Code.

"Professional Fee Claim" means an Administrative Claim under §§ 327, 328, 330, 331, 503, or 1103 of the Bankruptcy Code for compensation of professional services rendered or expenses incurred on the Debtor's behalf up to and through the Confirmation Date, but not a claim: (i) under § 503(b)(4) of the Bankruptcy Code for compensation of professional services rendered; or (ii) under § 503(b)(3)(D) of the Bankruptcy Code for expenses incurred in making a substantial contribution to the Debtor, which is a Non-Ordinary Course Administrative Claim and is subject to the Non-Ordinary Course Administrative Claim Bar Date.

"Real Property" means the real property located at 277 Long Beach Ave., York, Maine and owned by the Debtor.

"Rejection Damage Claim" means a Claim for obligations or damages arising under an unexpired lease or executory contract that the Debtor rejects under § 365 of the Bankruptcy Code.

"Rejection Damage Claim Bar Date" means thirty (30) calendar days after: (i) the Confirmation Date if rejected pursuant to the terms of this Plan; or (ii) entry of the order approving rejection of the contract or lease if rejected other than by the terms of this Plan.

"Sewer District" means the York Sewer District.

"Scheduled" means information set forth in the Schedules.

"Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by the Debtor with the Bankruptcy Court in this Case as they may have been or may be amended from time to time.

"Secured Claim" means a Claim of a Creditor which is secured by a valid, enforceable, and unavoidable lien against any Assets, or that was subject to setoff under the Bankruptcy Code, to the extent of the value of such Creditor's interest in the Debtor's and/or the Estate's interest in such Assets, or to the extent of the amount subject to setoff, as the case may be.

11

"State of Maine" means the State of Maine and any of its governmental agencies or offices.

"Town" means the Town of York, Maine

"Trust" means The L.F. Perkins Family Tennessee Investment Services Trust and any and all predecessors, successors and/or assignees of the Trust.

"Unclassified Claim" means any Claim that is not part of any Class, including Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims.

"Unimpaired" means that the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim are not altered pursuant to this Plan.

"U.S. Trustee" means the Office of the United States Trustee in relation to this Case.

"U.S. Trustee Fees" means all the fees and charges assessed against the Debtor by the U.S. Trustee in the Case and due pursuant to 28 U.S.C. § 1930.

**B.      Interpretation, Rules of Construction, Computation of Time**

**1.      Defined Terms**

Any term used in this Plan that is not defined in this Plan but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

**2.      Rules of Interpretation**

For purposes of this Plan:

(a)      Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

(b)      Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(c)      Any reference in this Plan to an existing document or exhibit Filed or to be Filed means

such document or exhibit, as it may have been or may be amended, modified, or supplemented through and including the Confirmation Hearing which, after such documents or exhibits are Filed, may be amended, modified, or supplemented only with the express written consent of the Debtor;

(d)     Unless otherwise specified in a particular reference, all references in this Plan to sections, articles, and exhibits are references to sections, articles, and exhibits of or to this Plan;

(e)     The words "herein," "hereof," "hereto," hereunder" and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan;

(f)     Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan;

(g)     All exhibits to the Plan and Plan Documents are incorporated herein, regardless of when those exhibits are Filed;

(h)     To the extent any discrepancy exists between the description contained herein of a document or agreement that is an exhibit to this Plan and with the provisions of that exhibit, the actual agreement or document shall govern;

(i)     The rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and

(j)     To the extent of any inconsistency, contradiction, or ambiguity between this Plan and the Confirmation Order, the terms of the Confirmation Order shall control.

**3.     Time Periods**

In computing any period of time prescribed by or allowed under this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## III.     UNCLASSIFIED CLAIMS

Certain types of Claims are not placed into Classes. Instead, such Claims are Unclassified Claims. Unclassified Claims are Unimpaired, and Holders of Unclassified Claims do not vote on the Plan because

they are automatically entitled to specific treatment provided for Unclassified Claims under the Bankruptcy Code or the Claim treatment has been agreed upon by the Debtor and a particular Claimant. Descriptions of the Unclassified Claims and the treatment of such Unclassified Claims under this Plan are provided below.

### A.     <u>Administrative Claims</u>

### 1.     <u>Allowance of Administrative Claims</u>

#### a.     <u>Allowance of Non-Ordinary Course Administrative Claims</u>

Unless otherwise expressly provided in this Plan, Non-Ordinary Course Administrative Claims shall be Allowed Claims only if: (i) on or before the Non-Ordinary Course Administrative Claim Bar Date, the Person holding such Non-Ordinary Course Administrative Claim both Files with the Bankruptcy Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim and serves the motion on counsel for the Debtor; and (ii) a Final Order is subsequently entered by the Bankruptcy Court allowing the Non-Ordinary Course Administrative Claim.  U.S. Trustee Fees are exempted from the Filing requirements set forth herein, and U.S. Trustee Fees shall be paid as required by statute.

**THE NON-ORDINARY COURSE ADMINISTRATIVE BAR DATE IS SIXTY (60) CALENDAR DAYS AFTER THE EFFECTIVE DATE. Notice of the actual date upon which the Non-Ordinary Course Administrative Claims Bar Date falls shall be set forth in the Notice of the Effective Date of the Plan that shall be served on parties-in-interest within fourteen (14) calendar days after the Effective Date (the "<u>Notice of the Effective Date</u>").**

**Persons holding Non-Ordinary Course Administrative Claims that do not File and serve a motion for payment on or before the Non-Ordinary Course Administrative Claims Bar Date shall be forever barred from asserting those Claims against the Debtor, the Estate, and/or the Assets. The Debtor or any other party-in-interest may File an objection to any motion requesting allowance of a Non-Ordinary Course Administrative Claim in accordance with the Bankruptcy**

**Code and/or any applicable Bankruptcy Rules.**

### a.      Allowance of Ordinary Course Administrative Claims

Holders of Ordinary Course Administrative Claims shall not be required to File any request for payment of such Claims. The Debtor has paid and continues to pay all Ordinary Course Administrative Claims as they become due.  Any party seeking express allowance of an Ordinary Course Administrative Claim may File a motion by the Non-Ordinary Course Administrative Claims Bar Date or forever waives the right to do so.  The Debtor shall identify the parties that the Debtor believes hold Ordinary Course Administrative Claims in a schedule attached to the Notice of the Effective Date.

### b.      Allowance of 503(b)(9) Claims

Holders of 503(b)(9) Claims, if any, were required to File proofs of claim by the General Bar Date, which was February 19, 2025, for most Creditors.  A 503(b)(9) Claim shall be an Allowed 503(b)(9) Claim if: (i) no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the Claims Objection Deadline, which is ninety (90) days after the Effective Date, unless upon motion of the Debtor, the Bankruptcy Court extends such deadline; or (ii) any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement between the Claimant and the Debtor or by Final Order of the Bankruptcy Court.

### c.      Allowance of Professional Fee Claims

Each Professional seeking approval by the Bankruptcy Court of a Professional Fee Claim[2], which includes compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date, must (in light of such Claims constituting Non-Ordinary Course Administrative

---

[2]      Professional Fee Claims do not include Claims either under § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered or under § 503(b)(3)(D) of the Bankruptcy Code for expenses incurred in making a substantial contribution to the Estate, which Claims are Non-Ordinary Course Administrative Claims and are subject to the Non-Ordinary Course Administrative Claims Bar Date.

Claims): File its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by no later than the date that is **sixty (60) days after the Effective Date.** Any objection to such Professional Fee Claims shall be Filed on or before the date specified in the notice of the application for final compensation. All such requests for payment of such Professional Fee Claims shall be subject to the authorization and approval of the Bankruptcy Court. **Persons holding Professional Fee Claims who do not timely File a final fee application shall be forever barred from asserting those Claims against the Debtor, the Debtor's Estate, or the Assets, unless otherwise ordered by the Bankruptcy Court. To the extent not paid in full prior to the Effective Date, the Debtor shall remain liable for Professional Fee Claims Allowed by the Bankruptcy Court.**

### d.    Allowance of Cure Claims

A Cure Claim shall become an Allowed Cure Claim when the assumption of the affected unexpired lease or executory contract is effective, pursuant to a Final Order of the Bankruptcy Court addressing assumption of the applicable unexpired lease or executory contract and the amount of the Cure Claim has been quantified by that Final Order. **Assumption and rejection of unexpired leases and executory contracts is discussed in § V of this Plan.**

### e.    U.S. Trustee Fees

U.S. Trustee Fees shall be determined in accordance with 28 U.S.C. § 1930, and nothing in this Plan shall impose or is intended to impose an obligation on the U.S. Trustee to File any Claim or motion relating to the U.S. Trustee Fees.

### 2.    Treatment of Administrative Claims

### a.    Payment of Allowed Non-Ordinary Course Administrative Claims

Except to the extent that any Person entitled to payment of a Non-Ordinary Course Allowed Administrative Claim agrees to different treatment, each Holder of a Non-Ordinary Course Allowed

Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash in an amount equal to such Allowed Non-Ordinary Course Administrative Claim on the earlier of: (i) the Effective Date; or (ii) the date that is fourteen (14) calendar days after such Non-Ordinary Course Administrative Claim becomes an Allowed Non-Ordinary Course Administrative Claim.

### b.        Payment of Allowed Ordinary Course Administrative Claims

Each Ordinary Course Administrative Claim, unless disputed by the Debtor, shall be satisfied by the Debtor, under the terms and conditions of the particular transaction (including historic practice between the parties) giving rise to that Ordinary Course Administrative Claim without any further action by the Holder of such Ordinary Course Administrative Claim.

### c.        Payment of 503(b)(9) Claims, If Any

Except to the extent that any Holder of a 503(b)(9) Claim agrees to a different treatment, each Holder of a 503(b)(9) Claim, if any, shall receive in full satisfaction, discharge, exchange, and release thereof, Cash in an amount equal to the Allowed amount of the 503(b)(9) Claim on the later of: (i) the Effective Date; or (ii) the date that is fourteen (14) calendar days after such 503(b)(9) Claim becomes an Allowed Claim.

### d.        Payment of Professionals Fee Claims

Holders of Professional Fee Claims, to the extent approved by the Bankruptcy Court, are to be paid, in full satisfaction, discharge, exchange, and release thereof, Cash in such amounts as are Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed Claim.  **To the extent not paid in full prior to the Effective Date, the Debtor shall remain liable for Professional Fee Claims Allowed at that time or subsequently Allowed by the Bankruptcy Court.**

### e.        Payment of U.S. Trustee Fees

When due in the ordinary course, all U.S. Trustee Fees payable under 28 U.S.C. § 1930, shall be paid in Cash, in full.  Nothing in this Plan alters or modifies any obligation of the Debtor to pay

fees required under 28 U.S.C. § 1930 or to file reports required by the U.S. Trustee.

### f.    Payment of Cure Claims

Each Holder of a Cure Claim shall receive, in full satisfaction, discharge, exchange, and release thereof, payment of such Cure Claim pursuant to the terms of any agreement between the Holder of the Cure Claim and the Debtor or pursuant to the terms of any Final Order of the Bankruptcy Court establishing the Cure Claim.  If no terms of payment are specified in either an agreement or a Final Order of the Bankruptcy Court, then the Cure Claim shall be paid in Cash, in full, on the date that the assumption and cure or assumption and assignment of the unexpired lease or executory contract is effective, as required by § 365(b) of the Bankruptcy Code.  Assumption and rejection of executory contracts and unexpired leases is discussed in § V of this Plan.  Section V of this Plan includes a schedule of executory contracts and unexpired leases to be assumed and provisions for cure amounts and payment of those amounts.

### B.    Priority Tax Claims

In accordance with § 1129(a)(9)(C) of the Bankruptcy Code, except as otherwise agreed by the Debtor and the applicable Claimant, each Holder of an Allowed Priority Tax Claim, namely the Internal Revenue Service [POC # 5 and #6], Maine Department of Labor [POC #3], and the Maine Revenue Service [POC #16] shall receive deferred Cash payments over a period not to exceed five (5) years from the Petition Date. Payments shall be made in equal, annual installments, and each installment shall include simple interest accrued on the unpaid portion of such Allowed Priority Tax Claim at the Federal Judgment Rate in effect as of the Effective Date per annum from and after the Effective Date; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Priority Tax Claim, in full, at any time on or after the Effective Date and before the expiration of the five-year period without premium or penalty.

18

## IV.    CLASSIFIED CLAIMS AND INTERESTS

### A. General

Claims against the Debtor (other than the Unclassified Claims described above) are classified into the following Classes:

| Class | Type of Claim | Impaired/Unimpaired | Entitled to Vote (Yes/No) |
|-------|---------------|---------------------|---------------------------|
| Class 1 | Town Secured Claim | Impaired | Yes |
| Class 2 | Sewer District Secured Claim | Impaired | Yes |
| Class 3 | First Boston Secured Claim | Impaired | Yes |
| Class 4 | Clean Laundry Funding Secured Claim | Impaired | Yes |
| Class 5 | Ascentium Capital Secured Claim | Impaired | Yes |
| Class 6 | USAM Fund Secured Claim | Impaired | Yes |
| Class 7 | Intentionally Left Blank | | |
| Class 8 | General Unsecured Claims | Impaired | Yes |
| Class 9 | Equity Interests | Unimpaired | No |

### B.    Town Secured Claim (Class 1)

#### 1.    Description (Class 1)

Class 1 consists of the Allowed Secured Claims of the Town. On April 1, 2024, the Town assessed real estate taxes against the Real Property for fiscal year 2024-2025 in the total amount of $41,527.92 (the "Real Estate Taxes"). Pursuant to 36 M.R.S.A. § 552, an inchoate lien was placed on the Real Property to secure payment of the Real Estate Taxes and remains in force until the same are paid.

**2.       Treatment and Security (Class 1)**

The Allowed Class 1 Claim shall be satisfied in the form of a note given by the Debtor in favor of the Town in the amount of $41,527.92 (the "Class 1 Note"). The Class 1 Note shall accrue interest at a rate of 8.5% *per annum* pursuant to 11 U.S.C. § 511 and 36 M.R.S.A. §§ 186 and 505 and shall be payable in five (5) equal annual payments pursuant to 11 U.S.C. § 1129(a)(9)(D). The first annual payment on the Class 1 Note shall be made on the Effective Date. The Debtor may prepay the Class 1 Note at any time without penalty.

All collateral securing the Town's Allowed Secured Claim shall secure the Class 1 Note.

**C. Sewer District Secured Claim (Class 2)**

**1.       Description (Class 2)**

Class 2 consists of the Allowed Secured Claims of the Sewer District. Pursuant to 38 M.R.S.A. § 1208, the Sewer District holds a perfected lien on the Real Property to secure payment obligations for the services provided thereon prior to the Petition Date.

**2.       Treatment and Security (Class 2)**

The Allowed Class 2 Claim shall be satisfied in the form of a note in the amount of $5,290.52 given by the Debtor in favor of the Sewer District in the face amount of the Sewer District's Allowed Secured Claim (the "Class 2 Note"). The Class 2 Note shall accrue interest at a rate of 8.0% *per annum* (representing Prime plus 0.5%) and be amortized over a period of two (2) years. The Debtor shall make twenty-four (24) equal payments monthly on the Class 2 Note. The first monthly payment on the Class 2 Note shall be made on the Effective Date. The Debtor may prepay the Class 2 Note at any time without penalty.

All collateral securing the Sewer District Allowed Secured Claim shall secure the Class 2 Note.

**D.       First Boston Secured Claim (Class 3)**

**1.       Description (Class 3)**

Class 3 consists of the Allowed Secured Claims of First Boston prior to the Petition Date. On or

20

about October 31, 2022, the Debtor entered into that certain loan agreement with First Boston pursuant to which the Debtor, along with 11 Webber and two other affiliated entities,  borrowed the principal amount of $5,490,000.00 from First Boston (the "First Boston Loan #1").   The First Boston Loan #1 is secured by a Mortgage on the Real Property, together with certain real property owned by 11 Webber and the two other co-obligors, and by an Assignment of Rents relating to the same (the "First Boston Loan #1 Collateral"). On or about April 6, 2023, Debtor entered into an additional loan agreement with First Boston, pursuant to which the Debtor, along with 11 Webber and York Beach Surf Club, LLC ("YBSC"), borrowed the principal amount of $7,950,000.00 from First Boston (the "First Boston Loan #2" and together with the First Boston Loan #1, the "First Boston Secured Loans").  The First Boston Loan #2 is secured by a Mortgage on the Real  Property, certain real property owned by 11 Webber and YBSC, and by an Assignment of Rents relating to the same (the "First Boston Loan #2 Collateral").   The total amount outstanding under the First Boston Secured Loans as of the Petition Date (according to the proof of claim filed by First Boston) equaled $15,689,519.30 ($6,370,429.88 due under First Boston Loan #1 and $9,319,089.41 due under First Boston Loan #2). The balance of the First Boston Secured Loans as of April 14, 2025, is $13,171,730.02 (the "First Boston Claimed Amount"). *See Objection to Debtor's Disclosure Statement with Respect to Plan of Reorganization of Beach House, LLC Dated April 1, 2025* [D.E. 152] (the "First Boston Objection") at ¶ 10.

## 2.      Treatment and Security (Class 3)

First Boston has made an election under Section 1111(b) of the Bankruptcy Code. When the 1111(b) election is made, generally, the undersecured creditor making such election is choosing to treat its claim as a nonrecourse fully secured claim. If an § 1111(b) election is made, to ensure the fair and equitable requirement of a plan is met, the creditor should retain its lien and receive deferred cash payments that total at least the amount of its allowed secured claim, and which have a present value as of the effective date of the plan, equal to the creditor's interest in the bankruptcy estate's property (i.e.,

the amount of the creditor's secured claim prior to making the § 1111(b) election).

Here, because First Boston made the § 1111(b) election, the Allowed Class 3 Claim shall be satisfied in the form of a note, substantially in the form of attached ***Exhibit B***, given by the Debtor in favor of First Boston bearing a face amount equal to $8,253,181.55 and an interest rate equal to eight percent (8%), which shall be repaid over five (5) years (the "1111(b) Note"). Beginning on the Effective Date and then on the same date of each month thereafter, Debtor shall make sixty (60) monthly payments consisting of principal and interest in accordance with the 1111(b) Payment Schedule attached hereto as ***Exhibit C***.

In addition to scheduled monthly payments of the principal and interest, Debtor will make annual payments to First Boston in an amount equal to five percent (5%) of its Excess NOI (the "Excess Cashflow Payment"). "Excess NOI" shall mean the Debtor's annual net operating income <u>minus</u> payments of the financial obligations set forth in the treatments of Classes 1 to 7 (except the Excess Cashflow Payment) <u>minus</u> an operating reserve equal to 10% of annual net operating income. Excess NOI shall be calculated after the end of each calendar year and the Excess Cash Flow Payment shall be made annually on or about April 15th of the next year. The first Excess Cashflow Payment for calendar year 2025-shall be calculated after December 31, 2025, and made on or before April 15, 2026.

Debtor may prepay the 1111(b) Note at any time without penalty; provided, however, that in any event the total amount paid under the 1111(b) Note shall not be less than $13,171,730.02. In the event, Debtor repays the entire principal balance of the 1111(b) Note but the total payments of principal and interest are less than $13,171,730.02, Debtor shall pay a premium amount to First Boston in an amount equal to the difference between $13,171,730.02 and the principal and interest already paid (the "1111(b) Premium"). The remaining balance due on the 1111(b) Note and any required 1111(b) Premium shall be paid on the fifth (5th) anniversary of the Effective Date, which is estimated to be $9,628,515.48 assuming there are Excess Cash Flow Payments made consistent with the Plan Projections

(the "1111(b) Note Balloon Payment").

The 1111(b) Note shall have the following terms and conditions: (i) First Boston shall be listed as a notice party and a co-insured party on Debtor's property insurance policy; (ii) Debtor shall provide all necessary and appropriate authorizations to enable First Boston to have direct access to Debtor's insurance agency with respect to Debtor's insurance policies and shall facilitate such access; (iii) Debtor shall provide all necessary and appropriate authorization to enable First Boston to have direct, unrestricted access, to Maverick with respect to the Debtor's business operation and Debtor shall facilitate such access; (iv) Debtor shall direct Maverick to provide First Boston the Daily Pickup and Cash Reports on a weekly basis; (v) on or before the fifth (5th) Business Day of each month, Debtor shall provide monthly cash flow reports to First Boston for the immediately preceding calendar month; and (vi) Debtor shall provide to First Boston notice of any default notice the Debtor receives from any vendor providing essential services to the Debtor in connection with its hotel operations within three business days of the Debtor's receipt of such notice of default .

The occurrence of any of the following events will be an event of default under the 1111(b) Note: (i) late payment to First Boston under the 1111(b) Note; (ii) late payments of any real estate taxes or assessments, utilities, including the Sewer District and the York Water District, property insurance, or management fees due to Maverick; (iii) condemnation of the Property; (iv) failure to have the Plan confirmed in accordance with the Court's *Order Setting Deadlines Under § 105(d)(2)* [D.E. 120]; (v) the modification, withdrawal or revocation of the Plan without First Boston's consent; (vi) the appointment of a trustee under chapter 7 or chapter 11 of the Bankruptcy Code; (vii) Debtor's failure to substantially consummate the Plan; (viii) Debtor's failure to authorize and allow First Boston to access Maverick; (ix) Debtor's failure to provide the weekly Daily Pickup and Cash Reports, or monthly cash reports; (x) Debtor's failure to provide First Boston notice of any default notice the Debtor receives from any vendor providing essential services to the Debtor in connection with its hotel operations within three

23

business days of the Debtor's receipt of such notice of default.

With exception of (i) above, Debtor shall have three (3) days to cure such default following its receipt of a written notice of default. First Boston shall have relief from the automatic stay under Section 362 of the Bankruptcy Code, upon the occurrence of an event of default that is not cured within the applicable cure period, which relief from stay shall continue to be effective in the event that the Debtor files a subsequent bankruptcy petition unless the Court in the subsequent case approves the imposition of the automatic stay after appropriate notice and hearing  Any notice of default shall be effective upon First Boston sending a Notice of Default via email to the Debtor at taylor@37urban.com with a copy to the Debtor's counsel at dcj@marcusclegg.com.

All the collateral securing the First Boston Loans as of the Petition Date shall secure the 1111(b) Note after the Effective Date.  The 1111(b) Note also shall be secured by (i) a collateral assignment of the Hotel Management Agreement between Debtor and Maverick; (ii) junior lien on the collateral securing the claims of Clean Laundry, Ascentium and USAM.

### E.  Clean Laundry Funding Secured Claim (Class 4)

#### 1.   Description (Class 4)

Class 4 consists of the Allowed Secured Claims of Clean Laundry Funding prior to the Petition Date. On or about May 13, 2024, the Debtor entered into that certain Secured Promissory Note and Agreement with Clean Laundry Funding pursuant to which the Debtor borrowed the principal amount of $24,526.80 from Clean Laundry Funding (the "Clean Laundry Secured Loan"). The Clean Laundry Secured Loan is secured by one (1) Electrolux ELD665 65 LB Washing Machine, including a 6" Steel Base and two (2) Electrolux ED- 645 45 LB Dryers (collectively, the "Clean Laundry Collateral"). The total amount outstanding under the Clean Laundry Secured Loan as of the Petition Date (according to the proof of claim filed by Clean Laundry Funding ) equaled **$24,267.96**.

24

### 2.        Treatment and Security (Class 4)

The Allowed Class 4 Claim shall be satisfied in the form of a note given by the Debtor in favor of Clean Laundry Funding in the face amount of its Allowed Secured Claim (the "Class 4 Note"). Per the Clean Laundry Funding proof of claim, the secured portion of its Claim is $18,000.00. The Class 4 Note shall accrue interest at a rate of 8.0% *per annum* (representing prime plus 0.5%) and be amortized over a period of three (3) years. The Debtor shall make thirty-six (36) equal payments monthly on the Class 4 Note for a period of thirty-six (36) months. The first monthly payment on the Class 4 Note shall be made on the Effective Date. The Debtor may prepay the Class 4 Note at any time without penalty.

The Clean Laundry Collateral shall secure the Class 4 Note.

### F.  Ascentium Capital Secured Claim (Class 5)

### 1.        Description (Class 5)

Class 5 consists of the Allowed Secured Claims of Regions Bank d/b/a Ascentium Capital ("Ascentium") prior to the Petition Date. On or about August 18, 2022, the Debtor entered into that certain Equipment Finance Agreement with Ascentium pursuant to which the Debtor was to make thirty-six (36) monthly payments of $1,296.82 to finance the purchase of Guest Wireless HSIA Network equipment (the "Ascentium Secured Loan"). The Ascentium Secured Loan is secured by the Guest Wireless HSIA Network equipment financed under such Equipment Finance Agreement (collectively, the "Ascentium Collateral"). The total amount outstanding under the Ascentium Secured Loan as of the Petition Date (according to the proof of claim filed by Ascentium) equaled **$31,345.13**.

### 2.        Treatment and Security (Class 5)

The Allowed Class 5 Claim shall be satisfied in the form of a note given by the Debtor in favor of Ascentium in the face amount of its Allowed Secured Claim (the "Class 5 Note"). Per the Ascentium proof of claim, the secured portion of its Claim is $31,345.13. The Class 5 Note shall accrue interest at a rate of 8.0% *per annum* (representing prime plus 0.5%) and be amortized over a period of three (3) years. The

Debtor shall make thirty-six (36) equal payments monthly on the Class 5 Note for a period of thirty-six (36) months. The first monthly payment on the Class 5 Note shall be made on the Effective Date. The Debtor may prepay the Class 5 Note at any time without penalty.

The Ascentium Collateral shall secure the Class 5 Note.

### G.   USAM I Fund Secured Claim (Class 6)

#### 1.   Description (Class 6)

Class 6 consists of the Allowed Secured Claims of USAM prior to the Petition Date. USAM obtained two judgments from Texas courts and domesticated the same in Maine. Upon domestication of the judgment, USAM received two writs of execution, one in the amount of $166,591.66 and the other in the amount of $188,834.96 (the "USAM Execution Liens"). The amount outstanding on the USAM Execution liens as of the Petition Date (according to the Proofs of Claim filed by USAM) equaled **$355,426.62**.

#### 2.   Treatment and Security (Class 6)

The Allowed Class 6 Claim shall be satisfied in the form of a note given by the Debtor in favor of USAM in the face amount of $50,654.87, being the amount of its Allowed Secured Claim (the "Class 6 Note"). The Class 6 Note shall accrue interest at a rate of 9.0% *per annum* (representing prime plus 1.5%) and be amortized over a period of five (5) years. The Debtor shall make sixty (60) equal payments monthly on the Class 6 Note for a period of sixty (60) months. The first monthly payment on the Class 6 Note shall be made on the Effective Date. The Debtor may prepay the Class 6 Note at any time without penalty.

The Class 6 Note shall be secured by Debtor's personal property.

### H.   Intentionally Left Blank (Class 7)

### I.   General Unsecured Claims (Class 8)

#### 1.   Description (Class 8)

Class 8 consists of General Unsecured Claims that are not Unclassified Claims or provided for

under any other Class contained in the Plan, and Class 8 Claims shall include any deficiency Claim arising from operation of § 506 of the Bankruptcy Code. For avoidance of doubt, Class 8 Claims shall include, but not be limited to, any and all Allowed General Unsecured Claims of: (a) First Boston, (b) Clean Laundry Funding, (c) Ascentium; (d) USAM and all claims of (i) Airwave Mechanical, Inc. (ii) Warren Mechanical, Inc. (iii) York Water District; (v) Gammon LLC, and (vi) those set forth in the Schedules or Filed in a timely proof of Claim as General Unsecured Claims, which totals **$5,786,347.45**.

### 2.    Treatment (Class 8)

In full and final satisfaction, settlement, release, and discharge of any General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive five (5) annual Cash Distributions of its *pro rata* share of an amount equal to [the Debtor's annual net operating income] minus [payments of the financial obligations set forth above in the treatments of Classes 1 to 7] minus [an operating reserve equal to 10% of annual net operating income] ("Excess NOI"). Excess NOI shall be calculated after the end of each calendar year and *pro rata* payments shall be made annually on or about April 15th of the next year. The first *pro rata* payment of Excess NOI-for calendar year 2025- shall be calculated after December 31, 2025, and made on or before April 15, 2026. To the extent that Excess NOI is unavailable under this formula for a given year, the Trust and/or Perkins will guarantee a minimum NOI payment of $25,000.00. Per the Cash Flow Projection attached hereto as ***Exhibit A,*** the Debtor estimates that the total amount of Excess NOI to be distributed to holders of Allowed General Unsecured Claims is ***$1,297,578*** (inclusive of a minimum $25,000 distribution to the holders of Allowed General Unsecured Claims in Year 1)..

### I.    Equity Interests (Class 9)

### 1.    Description (Class 9)

Class 9 consists of any and all equity interests in the Debtor. Ninety percent (90%) of the equity interests of the Debtor are held by the Trust, and ten percent (10%) of the equity interest of the Debtor

are held by Jack H. Lieberman ("Lieberman" and together with the Trust, the "Owners").

### 2. Treatment (Class 9)

The Owners shall continue as the only Interest Holders of the Debtor after the Confirmation Date. No equity distributions shall be made to the Owners premised on their Interests in the Debtor until such time as all other Claims have been satisfied under the Plan, absent agreement between the Owner and any Claimant otherwise entitled to the Distribution.

The Owners have already provided the Debtor with "new value" for purposes of § 1129(b) by contributing over $46,000 to get the Debtor ready for the 2025 season. Should Class 8 vote against the Plan, the Owners will provide additional new value sufficient to satisfy the "fair and equitable requirement" of § 1129(b), including by ensuring that holders of Allowed Class 8 Claims receive their *pro rata* share of minimum annual NOI payments and contributing funds for additional upgrades and improvements to the property.

## V. EXECUTORY CONTRACTS AND LEASES

The Bankruptcy Code authorizes the Debtor, subject to the Bankruptcy Court's approval, to assume, assume and assign, or reject executory contracts and unexpired leases under § 365 of the Bankruptcy Code. Such assumption, assumption and assignment, or rejection may be effected during the Case or through this Plan. This § V of the Plan contains the provisions relating to the assumption or rejection of executory contracts and unexpired leases of the Debtor.

### A. Assumption of Executory Contracts and Leases

The following executory contracts or unexpired leases are assumed by the Debtor as of the Effective Date (collectively, the "Assumed Contracts"):

- Hotel Management Agreement with Scout Hotel & Resort Management, LLC
  - Property management contract
  - Cure amount: $0.00

- Expedia Lodging Agreement with Expedia, Inc.

      o   On-Line Reservations contract
      o   Cure amount: $0.00

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption as of the Effective Date, pursuant to §§ 365(a) and 1123 of the Bankruptcy Code.

**B.**      <u>Rejection of Executory Contracts and Unexpired Leases</u>

Unless identified as an Assumed Contract above, all executory contracts or unexpired leases are rejected as of the Confirmation Date (the "<u>Rejected Contracts</u>").

**IF THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE RESULTS IN DAMAGES TO THE OTHER PARTY OR PARTIES TO SUCH CONTRACT OR LEASE, THEN ANY CLAIM FOR SUCH DAMAGES, IF NOT PREVIOUSLY EVIDENCED BY A FILED PROOF OF CLAIM, SHALL BE FOREVER BARRED AND SHALL NOT BE ENFORCEABLE AGAINST THE ESTATE, THE DEBTOR, ITS ASSETS OR AGENTS, OR SUCCESSORS OR ASSIGNEES, UNLESS A PROOF OF CLAIM IS FILED WITH THE BANKRUPTCY COURT AND SERVED UPON COUNSEL FOR THE DEBTOR ON OR BEFORE THIRTY (30) CALENDAR DAYS AFTER THE LATER TO OCCUR OF: (A) THE CONFIRMATION DATE; OR (B) THE DATE OF ENTRY OF AN ORDER BY THE BANKRUPTCY COURT AUTHORIZING REJECTION OF A PARTICULAR EXECUTORY CONTRACT OR UNEXPIRED LEASE. REJECTION DAMAGE CLAIMS SHALL BE CLASSIFIED AS GENERAL UNSECURED CLAIMS AND SHALL BE TREATED AS CLAIMS IN CLASS 8 UNDER THIS PLAN.**

**C.**      <u>Reservation of Rights With Respect to Assumed or Rejected Contracts</u>

The Debtor reserves the right to add or delete contracts from the Schedule of Assumed Contracts until fifteen (15) days prior to the date of the Confirmation Hearing by Filing a written notice with the Bankruptcy Court. The Debtor, within two (2) Business Days after that such addition or deletion is Filed,

shall serve such notice on the non-Debtor counterparty of any newly added or deleted Assumed Contract. If the change is to the Schedule of Assumed Contracts, then the notice shall contain an explanation of the counterparty's right to object to the cure amount or the assumption of the Assumed Contract for other reasons. Such notice shall be delivered by facsimile, electronic mail, or, if neither of those methods is available, by overnight delivery.

## VI.    PLAN IMPLEMENTATION

### A.    The Effective Date

The Plan shall become valid, binding, and enforceable upon the occurrence of the Effective Date. The Plan shall not be consummated or become binding unless and until the Effective Date occurs. Within fourteen (14) days after the Effective Date, the Debtor shall File and serve on each Holder of a Claim or Interest and each non-Debtor counterparty to an Assumed Contract, a copy of the Notice of the Effective Date and any schedules or exhibits thereto.

### B.    Funding the Plan

The source of funds for payments that the Debtor shall be required to make (or reserve for) on the Effective Date or under the Plan over time is as follows:

1.    **Revenue from Business Operations**: As evidenced by the Cash Flow Projections, the Debtor expects to generate significant revenue from operations on a going forward basis. That revenue will be the primary source of funding for the Debtor's Plan obligations until the Class 3 Note Ballon Payment or the 1111(b) Note Balloon Payment, as applicable, comes due.

2.    **Financing From Affiliated Entities**. If necessary, Perkins, the Trust, and/or affiliated persons or entities may contribute equity or debt to assist the Debtor in meeting its Plan obligations. If any cash is contributed as a loan or debt, any repayment obligations as to the same shall be expressly subordinated to the Plan obligations set forth herein.

3.    **Third-Party Financing**.   The Debtor anticipates borrowing from a third-party lender or lenders to make the Class 3 Note Ballon Payment or the 1111(b) Note Balloon Payment, as applicable, when it comes due.

4.    **Recoveries from Causes of Action**.   The Debtor may pursue various Causes of Action, if the Debtor believes that it will likely recover certain amounts from these Causes of

30

Action. The proceeds from the recoveries on any Causes of Action the Debtor chooses to pursue are not expected to be material.

### C.    Vesting of the Debtor's Assets

Except as may otherwise be provided in this Plan, on and after the Confirmation Date, all Assets shall vest in the Debtor free and clear of all Claims, liens, charges, other encumbrances, interests, or defenses (including recoupment) of any Holder of a Claim to the maximum extent permitted under § 1141 of the Bankruptcy Code. The Confirmation Order grants the Debtor, in its sole discretion, express authority to sell, convey, transfer, and/or assign any or all of the Assets in order to make payments under this Plan and/or to operate the Debtor's business. Additionally, after the Confirmation Date, the Debtor shall be authorized to take all actions necessary to prosecute or not prosecute, as the Debtor deems appropriate, in the Debtor's business judgment, any and all Causes of Action.

### D.    Corporate Structure

The Debtor shall remain a Maine limited liability company after the Effective Date.

### E.    The Debtor's Officers and Directors Post-Confirmation

The Debtor's officers and directors on the Confirmation Date are expected to be the same officers and directors that existed during the course of the Case.

## VII.    LITIGATION

### A.    Preservation of Causes of Action

Existing or potential claims or Causes of Action that may be pursued by the Debtor after the Confirmation Date include, without limitation, the following: (i) all Causes of Action or proceedings relating to accounts receivable of the Debtor or any rights to payment; (ii) any and all Causes of Action pursuant to any applicable section of the Bankruptcy Code; (iii) objections to Claims; (iv) claims that the Debtor and/or the Estate is entitled to set off or recoup against parties with Claims; (v) any action for equitable subordination of any Claim; (vi) any other Causes of Action, whether legal, equitable, or statutory

31

in nature, arising out of, or in connection with, the Debtor's business, the Assets, or operations, or otherwise affecting the Debtor; and (vii) any and all rights or claims to surcharge collateral of any Holder of a Secured Claim, regardless of whether such property has left the Estate at the time such surcharge claim is brought and as if such property were still property of the Estate.  In addition, there may be Causes of Action that currently exist or may subsequently arise of which the Debtor currently has no knowledge.  The Debtor does not intend, and it should not be assumed that, because any existing or potential claims or Causes of Action have not yet been pursued by the Debtor, or do not fall within the description above, that any such claims or Causes of Action have been waived by the Debtor and/or the Estate.  Under this Plan, the Debtor retains all rights to pursue any and all claims of the Debtor or Causes of Action to the extent the Debtor deems appropriate (under any theory of law or equity) and to the extent not otherwise released, discharged, or waived under this Plan.

The Debtor's investigation of potential Causes of Action held by the estate is ongoing. As a result, Holders of Claims and other parties in interest are specifically advised that, notwithstanding that any particular Causes of Action may not be disclosed, or set forth in this Plan, Causes of Action may be brought against the Holder of any Claim at any time, subject to any applicable statute of limitations under state law or federal law, as such may have been extended by the Bankruptcy Code.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Causes of Action upon or after Confirmation of this Plan, except where such claims or Causes of Action have been expressly released in this Plan or other Final Order.

**Under § 502(d) of the Bankruptcy Code, the Bankruptcy Court shall disallow any Claim of any entity that is a transferee of an Avoidance Cause of Action.**

### B.    The Debtor as Representative of the Estate

From and after the Confirmation Date, the Debtor shall continue to be the representative of the

Estate pursuant to §§ 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and, as such, shall be vested with the authority and power to, among other things: (i) object to Claims against the Debtor and/or the Estate; (ii) administer, investigate, prosecute, settle, and abandon all claims of the Debtor and Causes of Action; (iii) make Distributions provided for in this Plan, including, but not limited to, on account of Allowed Claims; and (iv) take such action as required to administer, wind-down, and close the Case.  As the representative of the Estate, as of the Confirmation Date, the Debtor shall succeed to all of the rights and powers of the Debtor while in the Case and the Estate with respect to all Assets vested in the Debtor as of the Confirmation Date. The Debtor retains, and may exclusively enforce, any and all such Claims, rights, and Causes of Action without the consent or approval of any third party, and without any further order of the Bankruptcy Court.

Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase of goods, or otherwise), or who has received services from the Debtor or a transfer of Cash or Assets of the Debtor and/or the Estate, or who has transacted business with the Debtor and/or the Estate, or leased equipment or property to the Debtor and/or the Estate should assume that such obligation, transfer, or transaction may be reviewed by the Debtor subsequent to the Confirmation Date and may, if appropriate, be the subject of an action after the Confirmation Date, whether: (i) such Person has Filed a proof of claim; (ii) such Person's proof of claim has been objected to by Debtor; (iii) such Person's Claim was included in the Schedules; (iv) such Person's Scheduled Claims have been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated; or (v) such action falls within the description of Causes of Action in the preceding section.

C.      **Provisions Related To Avoidance Causes Of Action**

In addition to the foregoing, the Debtor shall, in the exercise of its business judgment, have standing to bring and authority to settle, release, liquidate, or otherwise collect and enforce all Avoidance Causes of Action in order to effectuate the provisions of this Plan, including funding requirements hereunder.  For

33

the sake of clarity and without limiting the generality of the foregoing, the Debtor shall have discretion to select which Avoidance Causes of Action to pursue based on factors that the Debtor deems appropriate, in its business judgment. Distributions from Avoidance Recoveries shall be used to fund Plan obligations and/or to fund operating costs and expenses of the Debtor's operations.

## VIII.   OBJECTIONS TO CLAIMS AND DISTRIBUTIONS

### A.   Objections to Claims; Prosecution of Disputed Claims

The Debtor may object to the allowance of Claims or Interests Filed with the Bankruptcy Court where the Debtor disputes liability or allowance in whole or in part for any reason. All objections will be litigated to a Final Order; provided, however, that the Debtor shall have the authority to File, settle, compromise, or withdraw any objections to Claims or Interests, in its sole and absolute discretion, without approval of the Bankruptcy Court. The Debtor shall File all objections to Claims **no later than ninety (90) days after the Effective Date**, unless upon motion of the Debtor, the Bankruptcy Court extends such deadline.

### B.   Estimation of Claims

The Debtor, at any time, may request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such contingent, disputed or unliquidated Claim. The Bankruptcy Court shall retain jurisdiction to estimate any contingent, disputed, or unliquidated Claim at any time during proceedings concerning any objection to any contingent, disputed, or unliquidated Claim, including, without limitation, an objection during the pendency of any appeal relating to such objection. Subject to the provisions of § 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, the amount so estimated shall constitute the Allowed amount of such contingent, disputed, or unliquidated Claim. If the estimated amount constitutes a

maximum limitation on the amount of such contingent, disputed, or unliquidated Claim, then the Debtor

may pursue supplementary proceedings to object to the allowance of such contingent, disputed, or

unliquidated Claim.  All of the forgoing procedures are intended to be cumulative, and not necessarily

exclusive, of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn,

or resolved by any mechanism approved by the Bankruptcy Court.

### C.      Payments and Distributions on Disputed Claims

At such time as a Disputed Claim becomes an Allowed Claim, the Debtor shall distribute to the

Holder thereof any Distribution to which such Holder is then entitled under this Plan (net of any expenses,

including any taxes, relating thereto).  No Distribution, including any releases with respect to Avoiding

Power Causes of Action, shall be made or effective with respect to all or any portion of any Disputed Claim

pending resolution thereof.

### D.      Time and Method of Distributions

All Distributions under this Plan shall be made by the Debtor, except as otherwise provided herein.

Whenever any Distribution to be made under this Plan is due on a day other than a Business Day, such

Distribution shall instead be made on the immediately succeeding Business Day.  Unless the Holder of the

Claim receiving a Distribution agrees otherwise, any Distribution required by the terms of this Plan shall

be made in Cash.

### E.      Notice of Default

No default shall be deemed to have occurred under this Plan until: (i) such time as written notice

of an alleged default shall have been served on the Debtor and its counsel in accordance with the notice

provisions of this Plan (the "Notice of Default"); and (ii) the Debtor shall have failed to cure the

purported default within the timeframes set forth herein.  Upon receipt of the Notice of Default, the

Debtor shall have thirty (30) days to cure the alleged default.  In the event the Debtor believes no default

has occurred, the Debtor reserves the right to seek a determination from the Bankruptcy Court concerning

whether a default has occurred.  In the event the Debtor seeks a Bankruptcy Court determination, no default shall be deemed to have occurred under the Plan until the Bankruptcy Court enters a Final Order finding that a default has occurred.  In the event a default is deemed to have occurred, the Claimant's sole remedy against the Debtor is for breach of the Plan.

### F.      Time Bar to Cash Payment

Any Cash or other Assets that is unclaimed for 180 days after the Distribution is delivered to the Person entitled thereto, as provided in this Plan ("Unclaimed Property"), shall be deemed paid to such entitled Person and such Person shall not be entitled to any future Distributions under this Plan.  Any Unclaimed Property shall re-vest in the Debtor.

### G.      Compliance with Tax Requirements

To the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions shall be subject to such withholding and reporting requirements.

### H.      Setoffs

The Debtor, pursuant to §§ 502(b)(1) and 558 of the Bankruptcy Code and applicable non-bankruptcy law, may set off against any Allowed Claim, and the Distributions to be paid under this Plan, the claims, rights, and Causes of Action of any nature that the Debtor may have against the Holder of such Allowed Claim, including any surcharge rights under § 506(c) of the Bankruptcy Code; provided, however, that neither the failure to effect such a setoff, nor the allowance of any Claim under this Plan, shall constitute a waiver or release by the Debtor of any such claims, rights, and Causes of Action that the Debtor may have against such Holder.

### I.      De Minimis Distributions

Notwithstanding any other provision of this Plan, the Debtor shall not be required to make Distributions to any Creditor in an amount less than **$100.00** (a "De Minimis Distribution"), provided,

36

however, that if multiple De Minimis Distributions as to the same Holder exceed **$100.00** in aggregate, the Debtor shall be required to make such Distributions to the Holder at such time.

### J.    Finality of Distributions

All Distributions made prior to the Effective Date pursuant to any order of the Bankruptcy Court or after the Effective Date pursuant to the provisions of this Plan shall be deemed final.  No Person shall have any right to require or petition the Bankruptcy Court for a disgorgement of any such Distribution, unless the Distribution was contrary to the provisions of the Plan; provided, however, nothing herein shall preclude the right of parties in interest to object to the final fee applications Filed by Professionals or the Bankruptcy Court's authority and ability to review and rule on the final fee applications Filed by Professionals.

### K.    Name and Address of Holder

For purposes of all Distributions under this Plan, the Debtor shall be entitled to rely on the name and address of the Holder of each Allowed Claim as shown on any timely Filed proof of claim and, if none, as shown on the Schedules as of the date of the Confirmation Order, except to the extent that the Debtor receives written notice of a name change, transfer or change of address (including such a notice Filed with the Bankruptcy Court and served on the Debtor), properly executed by the Holder or its authorized agent, at least fourteen (14) days before the Distribution to be made to that Holder.  If such notice is not received fourteen (14) days before the date of the Distribution to that Holder, and the Distribution is returned to the Debtor, such Distribution shall be re-sent within fourteen (14) days after receipt by the Debtor of the returned Distribution in accordance with the information contained on the notice.  Notices should be served on the Debtor at the following address: c/o Marcus | Clegg, 16 Middle Street, Suite 501, Portland, Maine 04101, Attention: David Johnson, Esquire, or via email at dcj@marcusclegg.com.

### L.    Late-Filed General Unsecured Claims

The following proofs of claim were filed past the applicable General Bar Date and, therefore,

entry of the Confirmation Order shall disallow each such Claim:

| No. | Claimant | Filed |
|-----|----------|-------|
| 15 | Sojern Inc.<br>18135 Burke Street, 3rd Floor<br>Omaha, NE 68022 | February 27, 2025 |

All other rights and bases for objection to such Claims are reserved to the Debtor**, except to the extent set forth herein or by separate Final Order of the Bankruptcy Court.**

## IX.   MODIFICATION, WITHDRAWAL, AND REVOCATION OF THIS PLAN OR CONFIRMATION ORDER

### A.   Modification of this Plan

The Debtor reserves the right to seek to amend this Plan at any time prior to Confirmation, pursuant to § 1127(a) of the Bankruptcy Code. Subject to approval of the Bankruptcy Court after notice and a hearing, the Debtor reserves the right to seek to modify the Plan after the entry of the Confirmation Order, but before substantial consummation of the Plan, pursuant to § 1127(b) of the Bankruptcy Code.

### B.   Withdrawal of this Plan

The Debtor reserves the right to withdraw this Plan at any time before the entry of the Confirmation Order. At the option of the Debtor, this Plan shall be deemed null and void if any of the following events occur: (i) this Plan is withdrawn; (ii) the Confirmation Order is not entered; (iii) the Effective Date does not occur; (iv) consummation of this Plan is not substantially achieved; or (v) the Confirmation Order is reversed or revoked. Nothing contained in this Plan shall be deemed to constitute a waiver of any claim by the Debtor and/or the Estate, or to prejudice in any manner the rights of any of the foregoing in any further proceedings.

### C.   Effect of any Vacation or Revocation of the Confirmation Order

If the Confirmation Order is vacated, then this Plan shall be null and void in all respects and nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against, or any Interest in, the

38

Debtor or any claim by or right of, the Debtor and/or the Estate; (b) prejudice in any manner the rights of the Debtor and/or the Estate; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor and/or Estate in any respect.

**D.     Confirmation Request**

The Debtor requests Confirmation of this Plan if all of the applicable requirements of the Bankruptcy Code are met. To the extent necessary, the Debtor specifically requests Confirmation of this Plan under the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.

## X.     EFFECT OF CONFIRMATION OF THIS PLAN

**A.     Binding Effect of Confirmation**

Confirmation will bind the Debtor, all Creditors, all Interest Holders, and any other party in interest to the provisions of this Plan. If this Plan is confirmed by the Bankruptcy Court, then the treatment of Claims and Interests set forth in this Plan supersedes and replaces any agreements or rights the Holders of Claims or Interests have in or against the Debtor and/or the Estate and/or the Assets.

**EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS SHALL BE MADE AND NO RIGHTS SHALL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST, WHETHER AN ALLOWED CLAIM OR INTEREST OR NOT, FOLLOWING THE EFFECTIVE DATE.**

**B.     Good Faith**

**Confirmation of this Plan shall constitute a finding that this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code.**

**C.     Authority to Implement This Plan**

Upon entry of the Confirmation Order, all matters provided for under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is

necessary to achieve consummation and carry out this Plan and to make the contemplated Distributions. This authority includes the right of the Debtor to sell, transfer, or otherwise dispose of any or all Assets and use the proceeds of such sale, transfer, or disposition to satisfy the requirements of this Plan.

D. **Exculpation**

On or after the Confirmation Date, the Debtor, Marcus | Clegg and its attorneys and employees (collectively, the "Exculpation Parties") shall not have or incur any liability for, and are expressly exculpated, released, and discharged from any claim or any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of: (i) the Debtor's operations between the Petition Date and the Confirmation Date; (ii) the Chapter 11 Case; (iii) the administration of the Debtor's cash and other property after the Petition Date; (iv) the pursuit of confirmation of the Plan or any other plan; (v) the formulation, preparation, dissemination, implementation, administration, confirmation, or consummation of this Plan; (vi) any other act taken or omitted to be taken in connection with the Debtor's business during the Chapter 11 Case; or (vii) any contract, instruction, release, or other agreement entered into or created in connection with the foregoing, except only for actions or omissions to act to the extent determined by a court of competent jurisdiction (with such order becoming a final, non-appealable order) to be by reason of such party's gross negligence, willful misconduct, or fraud, and in all respects, such party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; it being expressly understood that any act or omission with the approval of the Bankruptcy Court shall be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud, unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation (collectively, the "Released Acts").

As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in this Plan, all past or present Holders of Claims or Interests,

40

directly or indirectly, shall release, and be deemed to forever release and discharge, the Exculpation Parties from the Released Acts and shall be precluded and permanently enjoined from: **(i)** commencing or continuing, in any manner or in any place, any action or other proceeding; **(ii)** enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; **(iii)** creating, perfecting, or enforcing any lien or encumbrance; **(iv)** asserting a right of subrogation of any kind against any debt, liability, or obligation due to the Debtor and/or the Estate; and **(v)** commencing or continuing any action, in any manner or in any place, against the Exculpation Parties that does not comply with or that is inconsistent with the provisions of this Plan. For avoidance of doubt, the exculpation provisions herein shall not apply to any conduct that occurred **(i)** prior to the Petition Date or **(ii)** after the Confirmation Date of the Plan.

E.   Debtor Injunction

Except as otherwise expressly provided in this Plan, or the Confirmation Order, on and after the Effective Date, all persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtor, the Assets, or the Estate that arose prior to the Effective Date (including, but not limited to, states and other governmental units, and any state official, employee, or other entity acting in an individual or official capacity on behalf of any state or other governmental units) are permanently enjoined from: **(i)** commencing or continuing in any manner, directly or indirectly, any action or other proceeding against the Debtor or any Assets of the Debtor; **(ii)** enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtor or any Assets of the Debtor; **(iii)** creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor or any Assets of the Debtor; **(iv)** asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligations due to the Debtor or any Assets of the Debtor; and **(v)** acting, in any manner, in any place whatsoever, that does not conform to,

41

comply with, or is inconsistent with any provisions of this Plan. Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article IX shall prohibit the Holder of a disputed Claim from litigating its right to seek to have such disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such disputed Claim of any of the obligations of the Debtor under this Plan. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or cause of action against the Debtor or any Assets of the Debtor based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Claim on which the payments due under this Plan have been made or are not yet due under this Plan.

### F.    Post-Effective Date Quarterly Fees and Reports to the U.S. Trustee

All U.S. Trustee Fees payable pursuant to 28 U.S.C. § 1930 prior to the Effective Date, to the extent they are not paid prior to the Effective Date, shall be paid when due in the ordinary course. The Debtor shall pay U.S. Trustee Fees that accrue under 28 U.S.C. § 1930 after the Effective Date when due in the ordinary course until no longer required by statute. The Debtor shall File quarterly post-Confirmation reports in accordance with applicable U.S. Trustee guidelines.

### G.    Withholding and Reporting Requirements

In connection with the consummation of this Plan, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor may reasonably request tax reporting information from Persons entitled to receive Distributions under this Plan and may withhold any Distributions from a party pending the receipt of such tax reporting

information.

**H.       Injunctions/Stays/Third-Party Temporary Injunctions**

Unless otherwise provided herein, all injunctions or stays arising under or entered during the Case under §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**I.       Discharge of Debtor**

Except as may otherwise be provided herein: (i) the rights afforded under this Plan and the treatment of all Claims and Interests herein, shall be in exchange for and in complete satisfaction, discharge, and release of Claims (and any defenses thereto or based upon such Claims, including recoupment) and Interests of any nature whatsoever against the Debtor, the Estate, and/or any of the Assets; (ii) on the Effective Date, all such Claims provided for under this Plan against the Debtor, the Estate and/or the Assets shall be satisfied, discharged, and released in full, as provided for under this Plan, as well as any defenses based upon such Claims, including recoupment; and (iii) all Persons and entities shall be precluded from asserting against the Debtor, the Estate, their successors, or the Assets, any Claims (or defenses arising therefrom) based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, except as may be specifically authorized under the Plan with respect to Claims for which further proceedings are permitted under the Plan.  Entry of the Confirmation Order shall provide the Debtor the full effect of the discharge provided for under § 1141(d) of the Bankruptcy Code.

**J.       No Admissions**

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor and/or the Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any Assets. Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, then

43

the Plan shall be null and void, and nothing contained in the Plan shall: (i) be deemed to be an admission

by the Debtor and/or the Estate with respect to any matter discussed in the Plan, including liability on any

Claim or the propriety of any Claim's classification; (ii) constitute a waiver, acknowledgement, or release of

any Claims, Interests, or any claims held by the Debtor and/or the Estate; or (iii) prejudice in any manner

the rights of the Debtor and/or the Estate in any further proceedings before the Bankruptcy Court or any

other court.

## XI.    RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the

Bankruptcy Code, arising in or relating to the Case or the Plan, to the fullest extent permitted by law,

including, but not limited to, the following matters:

(a)    To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or Interest, including, without limitation, any Administrative or Priority Claim;

(b)    To hear and determine all Claims arising from rejection of any executory contract or unexpired lease and to consummate the rejection and termination thereof;

(c)    To liquidate damages in connection with any disputed, contingent, or unliquidated Claims;

(d)    To adjudicate all Claims to, or ownership of any Assets of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

(e)    To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken prior to the Effective Date;

(f)    To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(g)    To hear and determine any and all Causes of Action;

(h)    To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of Professional Fees and Expenses and all other Administrative Claims which may be pending on, or made after, the Confirmation Date;

(i)    To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

(j)   To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Chapter 11 Case, or any controversy or dispute which may affect the Debtor's ability to implement or fund the Plan; and

(k)   To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

If the Bankruptcy Court abstains from exercising jurisdiction or is without jurisdiction over any matter notwithstanding this section, then this section shall not effect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter. All Creditors that Filed a proof of claim in the Case shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to such Claims.

## XII.   MISCELLANEOUS PROVISIONS OF THE PLAN

### A.   Holders of Claims and Interests as of Effective Date

All Distributions under the Plan shall be tendered to the Person that is the Holder of the Allowed Claim as of the Effective Date, unless the Debtor receives a notice of a change of address.

### B.   Post-Petition Liabilities and Treatment

The Debtor will make timely payments for post-petition liabilities incurred throughout this bankruptcy process and thereafter, including, but not limited to the quarterly charges for services from the Sewer District.

### C.   Successors and Assigns

The rights, benefits, and obligations of any Person or entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or entity.

### D.   Reservation of Rights

The Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, except as expressly set forth herein. The filing of the Plan, the statements or provisions herein, or the

taking of any action by the Debtor with respect to the Plan shall not be, or shall not be deemed to be, an

admission or waiver of any rights of the Debtor and/or the Estate with respect to the Holders of Claims or

Interests prior to the Effective Date.

**E.**      **Post-Confirmation Effectiveness of Proofs of Claim**

Except as may otherwise be provided elsewhere in the Plan, proofs of claim shall, upon the Effective

Date, represent only the right to participate, to the extent the proofs of claim become Allowed Claims, in

the Distributions contemplated by this Plan and otherwise shall have no further force or effect.

**F.**      **Further Assurances**

The Debtor and all Holders of Claims receiving Distributions under the Plan, and all other parties

in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take

any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**G.**      **Services by and Fees for Professionals Post-Confirmation**

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, any

requirement that Professionals comply with §§ 327 through 331 and 1103 of the Bankruptcy Code or any

order of the Bankruptcy Court establishing interim fee procedures during the Case in seeking retention or

compensation for services rendered after such date shall terminate, and the Debtor may employ and pay

any Professional in the ordinary course of business without any further notice to or action, order, or

approval of the Bankruptcy Court.

**H.**      **Entire Agreement**

The Plan supersedes all prior discussions, understandings, agreements, and documents

pertaining or relating to any subject matter of the Plan.

**I.**      **No Recourse**

No entity other than an entity entitled to receive a payment or Distribution under this Plan shall

have any recourse against the Debtor and/or the Estate, or the Assets for any obligation of or Claim

against the Debtor that arises prior to the Effective Date.

**J.**        **Severability of Plan Provisions**

If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any amended Plan term or provision is invalid, void, or unenforceable, then the Bankruptcy Court, with the consent of the Debtor, may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible, consistent with the original purpose of that term or provision. That term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions shall remain in full force and effect and shall in no way be affected, or impaired, or invalidated. The Confirmation Order shall constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this section, is valid and enforceable under its terms. Should any provision in this Plan be determined to be unenforceable after the Confirmation Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

**K.**        **Governing Law**

The rights and obligations under this Plan and any agreements, contracts, documents, or instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maine without given effect to Maine's conflict-of-laws principles, unless a rule of law or procedure is supplied by: (i) federal law (including the Bankruptcy Code and Bankruptcy Rules); or (ii) an express choice-of-law provision in any document provided for, or executed under or in connection with, this Plan.

**L.**        **Saturday, Sunday, or Legal Holidays**

If any payment or act under this Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act shall be deemed to have been completed on the required day.

**M.**     <u>Notices</u>

Any pleading, notice, or other document required by this Plan to be served on or delivered to the

Debtor must be sent by first class United States mail, postage prepaid, and by electronic mail to:

> Beach House, LLC
> P.O. Box 40
> Dennisport, MA 02639

With a copy to:         Marcus | Clegg
> 16 Middle Street, Suite 501
> Portland, Maine 04101 Attn: David Johnson, Esq.
> Email: dcj@marcusclegg.com

**N.**     <u>Final Decree</u>

The Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case

within thirty (30) days after the estate is fully administered pursuant to Fed.R.Bank.P. 3022 and D.Me.LBR

3022-1.

Dated:  May 16, 2025                    **BEACH HOUSE, LLC**

                                        /s/David C. Johnson
                                        David C. Johnson
                                        Jennie L. Clegg
                                        Brendan T. Barry

                                        Attorneys for the Debtor

                                        MARCUS|CLEGG
                                        16 Middle Street, Suite 501
                                        Portland, ME  04101
                                        (207) 828-8000
                                        bankruptcy@marcusclegg.com